## DUNLAP vs. CLEMENTS et als.

1. The statute, giving to bonds, executed for the forthcoming of property levied on under attachment, when returned forfeited, the force and effect of judgments, and authorising the issuance of executions thereon for the amount of the recovery in the attachment suits, was intended merely to provide a summary remedy, and not to deprive the obligors of any legal defence, which they might have set up against the bonds at common law.

2. If in such case the plaintiff, after the property has been replevied under the statute, causes a portion of it to be seized and sold under process sued out by him against one of the sureties, and thus prevents a compliance with the condition of the bond, it is a discharge of the obligors to the extent of the property so sold.

3. Although a failure to deliver a part of the property replevied in an attachment suit, without the fault of the plaintiff, will, under the statute, amount to a forfeiture of the bond, and authorise execution for the entire sum due on the judgment, after crediting it with the proceeds of that delivered, yet if the failure to deliver any portion of it is occasioned by the act of the plaintiff, the statute ceases to apply, and the obligors, in default of delivering the residue, can only, as at common law, be held liable for its value.

4. The writ of *audita querela* not being in use here, the proceeding by petition and supersedeas has been substituted for it, and is the proper mode of presenting a defence, in cases where execution has issued on a summary judgment, without a previous opportunity to the defendant to appear and contest it.

Error to the Circuit Court of Tuskaloosa. Tried before the Hon. Geo. D. Shortridge.

Dunlap sued out an attachment against Reuben Clements and caused it to be levied on a stock of goods, &c., which the latter replevied by giving bond with Elijah and James C. Clements as his sureties. Subsequently to this Dunlap also sued out an attachment against James C. Clements, and caused a portion of the same goods to be levied on and sold under it, before judgment had been obtained in the first mentioned suit. Afterwards a demand being made, the obligors tendered the value of the goods which had not been thus seized and sold, which was refused, and none of the goods being delivered, the bond was returned forfeited, and execution issued thereon for the amount of the judgment. The defendants in error thereupon filed their petition setting forth these facts and praying that the execution be perpetually superseded as to all except sixty dollars, the value

of the goods that were not sold under the second attachment. The plaintiff in error demurred to the petition, but his demurrer was overruled, and he declining to join in an issue of fact, the court rendered judgment in accordance with the prayer of the petition. This is the error now assigned.

J. L. MARTIN, for the plaintiff in error:

We contend that the first ground made by the petition, if it extended to all the goods replevied, would be no discharge of the bond. If they were, as contended for, in the hands of the law, and not subject to a second levy, it was the duty of the parties concerned to have protected them on that ground, by taking the necessary steps for that purpose, and failing to do this, they were left to their remedy by suit against the wrong doer. If, however, this position cannot be maintained, this point, as stated, goes only to a part of the goods, and cannot discharge the bond, which is necessarily forfeited for want of the delivery of the entire quantity replevied.—See Saddler v. Glover, 5 Dana, 551; Symes v. Montague, 4 H. & Munford, 180; 3 S. & Port. 421-6-7; Jemison v. Cozens, 3 Ala. 636; 3 Munford, 417.

It cannot be contended that the obligors in a replevy bond may pay the value of the property replevied, and thereby discharge their obligation to deliver the goods. The authorities cited show that nothing will discharge the bond but the delivery of all the property replevied, and although it may be worth but a small portion of the debt, and the title to it in another, and not in the defendant, yet it must be delivered.

The failure to deliver that portion of the goods which defendants value at sixty dollars, not being chargeable to the plaintiff or the officer, but to the negligence of the defendants, the law declares the bond forfeited.—Clay's Dig. 61, § 33.

ORMOND & PECK, for the defendants:

1. We contend, first, that by the levy of the first attachment and the execution of the replevy bond, the goods were in the custody of the law, and could not be taken from the surety or his bailee by an attachment subsequently issued.—Augustin v. McLean, 3 Port. 138; Rives & Owen v. Wellbourne, 6 Ala. 45; Hagan v. Lucas, 10 Peters, 400; Falls v. Wesinger, 11 Ala. 891-4-5.

2. The demand made on the replevy bond was inoperative, because the plaintiff, by his own act, had caused the goods to be taken, seized and sold, to satisfy another demand, and had thereby rendered it impossible for the surety to perform his obligation. To permit him to avail himself of a refusal caused by his own act, would be to violate one of the most salutary maxims of the law, " that no one shall take advantage of his own wrong."

3. It is of no moment that a small portion of the goods so replevied were not taken by the second attachment. Dunlap has just as effectually prevented the surety from complying with the condition of his bond by taking a part of the goods, as if he had taken the whole. For the doctrine is that where the covenantee, by his own act, incapacitates the covenantor from performing his covenants, it discharges him from the obligation.—See Platt on Covenants, 266 top page, 595 marg. and authorities there cited.

4. It is also objected that the surety, when the goods were levied on the second time, should have interposed and tried the right of property. It is true, he might have done so, but surely he waives no right by declining to avail himself of an extraordinary privilege secured to him by statute, any more than where an execution is levied on the property of a third person, when he may at his election try the right of property, or assert his rights in the mode provided by the common law.

PARSONS, J.—The bond was returned forfeited, and that gave it the force and effect of a judgment under the statute, and authorised the clerk to issue an execution thereon, against the obligors, for the amount of the judgment and costs recovered in the attachment suit.—Clay's Dig. 61, § 33.

The amount to be paid by the obligors, when the bond is returned forfeited, is fixed by the statute, and it is the sum recovered in the attachment suit and the costs of that suit. It is true, as contended at the bar, that if the bond is returned forfeited for the non-delivery of only a small part of the property replevied, and there should be a large amount of the judgment remaining, after applying what was delivered, the obligors would be bound for it all at law. Although this is conceded, it does not prove that the statute prohibits any good defence against the bond. It only proves that such defence, by itself, is not good.

The statute makes no provision for the trial of any matter of

defence which the obligors may have against the bond, but it is manifest that the Legislature neither intended to prohibit, nor to impair the effect of any legal defence, by having declared that such bonds, when returned forfeited, should have the force and effect of judgments, and that executions might be issued. A summary practice is all that was intended. A release or any other legal discharge is as good against the bond as it was at the common law; and in truth the effect of every matter of defence not affected by the statute, is to be ascertained by the common law, and the defence now presented is not, as we think, affected by the statute.

2. The matters now relied on, as discharging Elijah and Jas. C. Clements to a certain extent from the bond, will best appear by a statement of the case.

The plaintiff in error sued out an attachment against Reuben Clements, which was levied on certain goods as his property, and he replevied them by giving Elijah Clements and James C. Clements as his sureties on the bond. And the plaintiff in error subsequently sued out another attachment against James C. Clements, and caused it to be levied on the chief part of the same goods, and they were sold under an order in that suit. This was before the bond in question was forfeited, and Elijah and James C. contend that by force of these facts they are discharged from the bond, except to the extent of the value of the goods replevied, which were not taken under the second attachment, and which did not exceed the sum of sixty dollars.

The plaintiff by his own act prevented the defendants from delivering the goods that were taken under the second attachment, and thus himself was the cause of the forfeiture, and for that reason he should not take advantage of it.

Lork Coke, in speaking of feoffments in fee upon condition, observes, that if the feoffor is the cause wherefore the condition cannot be performed, he shall never take advantage for non-performance thereof. In such case the estate of the feoffee becomes absolute. "And so it is," he says, "if A. be bound to B. that J. S. shall marry Jane G. before such a day, and before the day B. marry with Jane, he shall never take advantage of the bond, for that he himself is the mean that the condition could not be performed. And this is regularly true in all cases." —2 Thomas' Coke, 19.

We cannot doubt, therefore, but that Elijah and James were discharged to some extent, and as the court below did not discharge them in respect of the value of the part of the goods that were not taken under the second attachment, and as they do not complain, we are confined to the question whether there is error against the plaintiff in what was done. Taking the question upon the common law, I think Elijah and James, considered as principal obligors (for it is not necessary to consider them as sureties, from the view we take of the case) were not discharged wholly from the bond, because the plaintiff prevented them from delivering part of the goods mentioned in the condition. The thing to be done in performance of the condition, was to deliver certain goods which consisted of several and distinct articles, and therefore I think they were liable at the common law for the articles which the plaintiff did not prevent them from delivering.— See Willes, 351 ; Chesman v. Nainley, Lord Raymond, 1456 ; Strange 1138 ; Newman v. Newman, 4 Maule & S. 66 ; Platt on Covenants, 598. If I am right in supposing that Elijah and James were not discharged from the obligation to deliver that part of the goods, the plaintiff is not injured, for they were in fact not discharged as to them, in the court below.

3. It is conceded that if Elijah and James had delivered the part of the goods which the plaintiff prevented them from delivering, but failed to deliver the rest, the bond would have had the effect of a judgment and an execution might have issued for the amount recovered in the first attachment suit, and they would have been liable for all which the goods delivered were not sufficient to satisfy. This appears to be according to the effect of the statute ; but the statute cannot apply to this case, for it could not have been within the intention of the Legislature. Here, the plaintiff prevented the other party from delivering the chief part of the goods, and it never could have been intended by the Legislature that he should have a judgment for the whole amount, nevertheless. The real case that existed at and before the time when the bond was returned forfeited, or actually forfeited, was not within the act, and resting it upon the common law, there has been no error to the prejudice of the plaintiff. If the doctrine for which he contends could apply to the case, it would probably discharge Elijah and James wholly, which was not done by the court below. They were sureties, and were bound

for nothing more than the delivery of all the goods. By depriving them of the power to deliver a part, he subjected them to the consequences of a forfeiture, provided there can be a total forfeiture, after such act by the plaintiff, and thus by his own act, gave to the bond an effect which it did not have otherwise, but I do not wish to put the case upon that ground, and therefore I do not undertake to decide it.

4. Elijah and James, upon their petition stating the facts, obtained in the court below a supersedeas against the execution, except the sum of sixty dollars, which they alleged in the petition was the value of the goods not delivered, but which were not taken under the second attachment. The plaintiff demurred to the petition, and having thus admitted the facts and not offered any issue of fact, the court made the supersedeas perpetual as to all, except the value of the goods not taken under the second attachment, and which the parties were prevented from delivering by another cause. The counsel of the plaintiff does not admit that this was a legal mode of proceeding. If the *audita querela* were in use here, there can be but little doubt that the defendants could thereby establish their discharge, for there was no legal mode of pleading, or of trying the question at any time before the execution was issued, and there have been instances in our practice in which the petition and supersedeas have been recognised as a substitute for the *audita querela*, with the right to the parties of making up an issue upon the petition of law or of fact, to suit the circumstances of their case.—Edwards v. Lewis, 16 Ala. 813. In most cases this practice is preferable to a bill in equity, for it saves the right of trial by jury, is more speedy and less expensive.

Let the judgment be affirmed.