## CRABB'S ADMINISTRATOR *vs.* THOMAS.

1. A separate estate in slaves may be created by a verbal gift to a married woman consummated by delivery; and the donor cannot, by deed subsequently made without the consent of the donee, and while the latter is in possession, alter the terms of the gift.
2. A married woman, whose separate estate is levied on by her donor's creditors, and who has no trustee to protect her interest at law, may come into equity for relief.
3. Where the bill alleges a gift of slaves to complainant "*to her separate use for life, with remainder to her children,*" while the proof shows a gift "*to her and the heirs of her body,*" free from the control of her husband," the variance between the *allegata* and *probata* is fatal.
4. A case will not be remanded that the bill may be amended, when the amendment would make a different case from that stated in the bill.

APPEAL from the Chancery Court of Tuskaloosa.
HEARD before the Hon. E. D. TOWNES.

THIS bill was filed by Mrs. Elvira Thomas, suing by her next friend, to protect her separate estate in certain slaves from the judgment creditors of her father, from whom she derived them. The facts are all set out at length in the opinion of the court.

E. W. PECK, for the appellant:

1. The common law does not allow a married woman to possess personal property independently of her husband; yet a trust for her sole benefit may be created, which a court of equity will see strictly performed.—Clancy's Rights of Mar. W., b. 3, c. 1, p. 251.

2. An estate to the separate use of a married woman can only be created by deed or will, or, at the least, by an instrument in writing. The exceptions to this rule (if it be proper to call them exceptions) are where the subject-matter of the estate is of a paraphernal character.—*Ib.*, pp. 92, 262.

3. Although equity so qualifies the common law, as to permit a *feme covert* to take and enjoy personal property to her separate use, when given to her with that intent, yet such intent must be very distinctly expressed, before the court will permit it to prevail against the rights of the husband. The

instrument by which such gift is made must clearly speak the donor's intention.—Clancy 262; Palmer v. Trevor, 1 Vern. 261-2; Tyrrel v. Hope, 2 Atk. 558; Pollard *et al.* v. Merrill & Eximer, 15 Ala. 169, 173; Hale v. Stone, 14 *ib.* 803, 810; Mitchell v. Gates, at this term. An estate in remainder in personal property cannot be created by parol.—2 Kent Com. 351, and note b.

4. If such an estate may be created without deed, will, or writing, the evidence in this case is insufficient for that purpose. The witness does not pretend to remember the words employed by the donor, but says, she has used his language as near as she could recollect it.

5. The case made by the proof is not the case stated in the bill; and for this reason the decree cannot be sustained.— Clements v. Kellogg, 1 Ala. 331, 333; Lyon v. Goodwin, 4 Por. 297.

6. The case made by the proof does not show a separate estate in the wife. The witness says, "the gift was made to Mrs. Thomas, free from the control of her said husband." This, if it was in fact the language actually employed by the donor, would not create a separate estate in the donee. Mr. Bright, in his work on Husband and Wife, says, the words "to be under her sole control" do not create a separate estate.—Vol. 2, 208.

7. The pretended gift set up in the bill is void by the statute of frauds; the possession was not really and *bona fide* with the pretended donee; it was in fact with the husband. Clay's Dig. 255, § 2.

ORMOND & NICOLSON, *contra:*

The only question which arises upon the record is, whether a separate estate in personal property can be created by a verbal gift. There seems to be no authority bearing directly upon the point, either in this country or in England, and the question must be solved upon principle alone. All contracts or agreements, at common law, were divided into specialties and parol agreements, the latter including all contracts not under seal. No instrument in writing was required for the sale of personal property. It is not necessary to the validity of the sale of a negro now, that there should be any written

conveyance. If, then, the title to a slave may be conveyed by verbal gift, why may it not be given to a particular person, and for a special purpose? The only reason why such gifts are usually in writing, is, that the evidence thereof is the more readily perpetuated. For if, as in Tyrrill v. Hope, 2 Atk. 558, a separate estate was established in the wife, upon a mere memorandum in writing not under seal, why may it not be by verbal gift, if it does not invade the provision of the statute of frauds? But the statute of frauds can have no influence upon this case, as the property was dedicated to the daughter by her father long anterior to the existence of any debt to complainant's intestate. The only difficulty, then, is in the proof, and not in the principle involved. Before the passage of the statute of frauds, a trust could be created by parol declaration, if the property could be so conveyed.—Hill on Trustees 56; Kirkpatrick v. Davidson, 2 Kelly 297, and authorities there cited. In McQueen on Hus. and Wife, 2d part (66 Law Lib.), 292, the question whether a separate estate can be created by parol testimony is touched upon, and the author expresses it as his opinion that it may be done.

LIGON, J.—This bill is filed by a married woman, through her next friend, to protect her separate estate from the creditors of her father, from whom she derived it. It alleges, that in 1830, Charles Lewin, the father of the complainant, some time after her marriage, gave her a negro woman named Martha, who has since become the mother of a boy named Henry; that the woman was delivered to her at the time of the gift, and has been constantly in her possession since that time; that the boy was born while his mother was thus held by her, and is still in her possession; that the donor gave her the slave to her own separate use for life, with remainder to her children; that she has no trustee, and that the gift was never reduced to writing. It is further alleged, that several years after this gift the donor became embarrassed in his pecuniary circumstances, and among others made a debt to George W. Crabb, on which judgment has been obtained, and an execution issued on it has been levied on the slaves above named; that after this debt was contracted, the donor made a deed to one Dennis Dent, without complainant's

knowledge or consent, by which the slaves were conveyed to him in trust to the separate use of complainant during her life, with remainder to her children; that she has three children. The complainant sets up no claim under the deed to Dent, but insists that her right was perfect under the oral gift, and that she should not be prejudiced by any subsequent disposition of the property by the donor, made without her consent. The prayer of the bill is for an injunction and for general relief. To this bill there was an answer and a demurrer. The chancellor overruled the demurrer, and on the merits decreed in favor of the complainant; and his decree is now assigned for error.

It is here insisted, that the trusts and uses set up in the bill cannot be created without a writing of some kind, and, as the bill alleges none, it is without equity. By our law, the absolute property in chattels may be passed by delivery, and we can see no good reason why a less interest may not be passed in the same way. At common law, an express trust might be created without writing, when the subject of the trust could be passed without an instrument in writing.—Hill on Trustees 56; Gilbert on Uses 270-271; Dowman's Case, 9 (Coke's) Rep. 10; Porter *et al.* v. Bank of Rutland *et al.*, 19 Verm. 410. Thus, it is said, a trust may be created in lands *by words only*, when it is accompanied by feoffment, or by livery of seizin; or in a chattel, if declared by word at the time of the delivery. Hill on Trustees, *supra.* We have repeatedly held, that the declarations of the donor, accompanying the gift, and made at the time of the delivery of the chattel, may be proved to show what interest was intended to be passed to the donee.—Olds v. Powell, 7 Ala. 662; 9 *ib.* 861; Gunn v. Barrow, 17 *ib.* 743. In all these cases, the proof thus admitted was received to establish a separate estate in the wife, at the time of the gift of slaves by the father to the daughter, who was a married woman at the time of the gift; and to rebut the presumption of an absolute estate in the husband arising from his possession of the slaves before the terms of the gift had been reduced to writing.

From these cases, with others which may be cited from our own decisions, we conclude, that in gifts of slaves to married women, it is competent to limit the interest they take, and

define the extent of their title, without any writing. Nor would the donor be allowed, by his deed subsequently made, without the consent of the donee, who is in possession of the property, to alter the terms, or change the interest which passed to her on the delivery of the slaves. He parts with all dominion over the property when the oral gift is perfected by delivery, and has no greater right to convey it away, than a stranger to the title would have. If he makes a deed to the donee, or a trustee for her, conforming to the terms of the gift, this deed will not be regarded in equity as the *origin* of her right to her life use of the property; *that* will be referred to the time of the oral gift, if it becomes necessary to do so to protect her interest. The deed in this case to Dent, as trustee for Mrs. Thomas, although it may conform in its statements of the trust to her, with remainder to her children, to the terms of the oral gift, as they are set out in the bill, still is not the origin of her right; this must be held to have arisen in 1830, the time when the oral gift was made. The bill alleges, that at this time Charles Lewin, the donor, was unembarrassed, and that the debt of Crabb arose long afterwards.

The whole case made by the bill shows the right of Mrs. Thomas to the slaves in controversy ; the danger to that right arising from the conduct of the appellant in levying upon the property of the appellee, to satisfy a debt which is no charge upon it, either at law or in equity ; and that, being a married woman, without a trustee to hold the legal estate for her, she is without remedy at law. The bill is a good one, and the demurrer to it was correctly overruled.

We do not, however, think the final decree can be sustained on the proof found in this record. It is a settled and invariable rule in equity, as well as at law, that the *allegata et probata* must substantially correspond. This is not the case on this record. The bill charges, that the slaves Martha and her increase were given to Mrs. Thomas "*to her separate use for life, with remainder to her children*"; while the proof is, that she was given to "Mrs. Thomas *and the heirs of her body, free from the control of her husband.*" The legal effect of this gift excludes any remainder to the children. The words used are such as were formerly employed to pass an estate

tail, and under our law now pass the entire interest to the first taker; so that, instead of vesting a use for life in the appellee, she takes the absolute property, discharged from the marital rights of her husband. The words "free from the control of her husband" are effectual to show that the donor did not intend the husband to take any interest in the property. The law does not require any set form of words to create a separate estate in the wife; if any are used which show a clear intention to exclude the marital rights of the husband, the courts will give them effect.—Williams v. Maull, 20 Ala. 721; Pollard v. Merrill, 15 *ib.* 169, and authorities there cited.

The title made by the bill, and that shown by the proof, are essentially different, and for this reason the decree must be reversed.

We would remand the case, that the bill might be amended in the court below, but the amendment required in order to adapt the bill to the proof would make a different case from that set out in the original bill, and for this reason would not be allowable.—Irvine v. McKinley, 13 Ala. 681, and authorities there cited. It may not be amiss to say, that in either the case made by the , or that shown by the proof, the appellant, who becar ..editor of the donor after the gift to Mrs. Thomas was ¡ ..:cted by delivery, will not be allowed to charge the slaves with its payment.

Let the decree be reversed, and the bill dismissed without prejudice, at the cost of the next friend of the appellee.