## LOCKHART AND WIFE *vs.* CAMERON ET AL.

[BILL IN EQUITY FOR REFORMATION OF DEED OF GIFT.]

1. *Uncertainty and insufficiency of proof.*—A reformation will be refused, where the donor is the only witness who testifies to the alleged mistake in the deed, and his testimony is confused and contradictory.

2. *Variance between allegations and proof.*—Where the bill alleged, that the donor intended to convey the property "to the sole and separate use and behoof of his daughter, and of any children she might have, so that it should not be subject to any rights, debts, or engagements of any husband whom she might marry, and at her death should be the property of her children";

while the proof was, that he "intended to bind the property to her and her children forever"—"never intended it to be subject to any man's debts"—"intended that it should go to her children at her death"—"gave it to her and her heirs"—"intended to entail the property on her and her children"—"made the deed to her, and considered the girl her property,"—*held*, that the variance between the allegations and proof was fatal.

3. *Parol gift to feme covert for her separate use.*—A valid gift of slaves, to the sole and separate use of a married woman, may be made by parol; but, where the donor has previously conveyed the slaves, by deed, to the donee, no interest passes by his subsequent parol gift.

4. *Effect of husband's admissions of wife's title.*—If the husband, in ignorance of his marital rights, disclaim all interest in slaves received from his father-in-law under a deed of gift to his wife, and admit that they belong to his wife during her life, and at her death to her only daughter, such admissions vest no title in the wife during coverture; and are ineffectual, for want of delivery, as a gift to the daughter.

5. *Reduction to possession as husband of wife's chattels.*—The marital rights of the husband do not attach to slaves, belonging to his wife, which he receives and holds, in ignorance of his rights, as the separate property of his wife, disclaiming all ownership in himself, and never attempting to assert his marital rights until after the death of his wife.

6. *Title of next of kin.*—The next of kin and distributees of an intestate can only enforce their rights through an administration on his estate, and can assert no title directly from the intestate.

APPEAL from the Chancery Court of Sumter.

Heard before the Hon. WADE KEYES.

THIS bill was filed by Jacob Lockhart and Lucretia, his wife, against the administratrix and certain creditors of George Cameron, deceased, who was the father of Mrs. Lockhart; asking the reformation of a deed of gift of certain slaves, an account of their hire, an injunction to prevent their sale, the specific delivery of the slaves to complainants, and general relief. The deed of gift was executed in South Carolina, in 1824, by Simeon Clay, who was the maternal grandfather of Mrs. Lockhart; and conveyed a negro girl, named Louisa, who is the mother of the other slaves in controversy, to his daughter Nancy C. Clay, who was then unmarried, but who married said Cameron in 1828, and became by him the mother of Mrs. Lockhart. The bill alleges, that this deed was drawn either by the donor himself, or by one Thomas, both of whom were unskilled in drawing conveyances, and ignorant of their legal effect, and, in consequence of the ignorance and unskillfulness of the draftsman, fails to express

the intention and meaning of the donor; that his purpose and intention was, "to convey said slave to his daughter Nancy, for the sole and separate use and behoof of herself and of any children she might have, so that said slave should not be subject to any rights, debts, or engagements of any husband whom she might marry, and at her death should be the property of her children." It further alleges, that said Clay, when Cameron asked the hand of his daughter in marriage, distinctly informed him that this slave had been settled upon said Nancy, for the exclusive use of herself and any children she might have, so that her husband would not acquire any interest whatever in said slave—that the family of slaves to which Louisa belonged had been entailed on him by his grand-father, and he intended that Louisa and her increase should be entailed on his grand-children in the same way; that Cameron made no objection to this; that the marriage of Cameron and said Nancy was soon afterwards solemnized, and Cameron received said slave into his possession, as the separate property of his wife during her life, and of her children at her death; that they removed to Alabama several years afterwards, and brought said slave with them ; that Cameron always disclaimed any title in himself to said slaves, repeatedly and publicly declaring that they belonged to his wife and children; that after the death of his wife, which happened about five years before the filing of the bill, he declared, frequently and publicly, that the slaves belonged to his only daughter, said Lucretia. It is further alleged, that said Cameron afterwards married one Sarah Grant, who was a daughter of Samuel Swilley; that in 1853 he executed two deeds of trust on said slaves, conveying them to one Roberts as trustee, to indemnify Samuel and John Swilley against their accommodation endorsement and acceptance of two bills of exchange; that said Swilleys, at the time these deeds were executed, had actual notice of complainants' title to said slaves, or were apprised of facts which are sufficient to charge them with implied notice; that Cameron afterwards died in possession of said slaves, and his administratrix had them appraised as a part of his property; that said slaves will be sold, unless the court interpose, under said deeds of trust, and as the property of Cameron's estate.

Answers on oath were waived, and all the defendants filed answers, denying the equity of the bill, and insisting that the slaves belonged to Cameron. The Swilleys further allege, that before they became bound as accommodation endorser and acceptor for Cameron, hearing that Mrs. Lockhart claimed some interest in said slaves under the deed of gift to her mother, they obtained a copy of it, and asked the opinion of an attorney-at-law as to its construction, and were advised by him that it vested the absolute property in said Cameron.

The evidence, so far as it is material, is noticed in the opinion of the court.

On final hearing, the chancellor dismissed the bill, on account of the insufficiency of the proof; and his decree is now assigned as error.

TURNER REAVIS, for the appellants.—The case is presented in two aspects: 1st, in respect to the complainants' rights as against the personal representative of George Cameron; and, 2dly, as regards their rights against the Swilleys.

I. In the first aspect of the case, it is well settled that a court of equity will reform a deed of gift, drawn by the grantor himself, which, from his want of skill, or ignorance of law, does not express his intention.—Larkins v. Biddle, 21 Ala. 252; Trapp v. Moore, 21 Ala. 693; Godwin v. Young, 22 Ala. 553; Betts v. Betts, 18 Ala. 787; Stone v. Hale, 17 Ala. 557. It is also well settled, that if a husband receive property from his wife's father, with a distinct understanding, even by parol, that it is for her separate use, a trust fastens upon it, which a court of equity will enforce.—Betts v. Betts, 18 Ala. 787; Crabb v. Thomas, 25 Ala. 212; Jennings v. Blocker, 25 Ala. 415. Even if the title has vested in the husband by operation of law, and he recognizes and treats it as her separate property, a court of equity will sustain the wife's title, as against the personal representative of the husband.—Williams v. Maull, 20 Ala. 721; Jennings v. Blocker, 25 Ala. 415. The declarations of a person in possession of personal property, in disparagement of his own title, or repudiating title in himself, are competent evidence against him, or against a subsequent purchaser from him.—

Barnes v. Mobley, 21 Ala. 232; Jennings v. Blocker, 25 Ala. 415.

Applying these principles to the pleadings and evidence in this case, the decree of the chancellor cannot be sustained, so far as the personal representative of George Cameron is concerned. The testimony of the donor, corroborated by proof of the repeated declarations of Cameron, and of his wife in his presence, that the deed does not express his intention, and that his intention was to the effect alleged in the bill, is undoubtedly sufficient to authorize a reformation of the deed; the answers not being under oath, nor sustained by any sufficient evidence. It is alleged and, proved, also, that Cameron, while negotiating for the marriage, was distinctly informed by the grantor, that the slave had been settled upon his intended wife and her children; and as he made no objection, but consummated the marriage shortly afterwards, took possession of the slave, and always treated her and her increase as the property of his wife and child, it must be presumed that he consented to hold the property as the separate estate of his wife, and subject to the trust created by her father. Even if no trust had attached to the property, Cameron's continued recognition and treatment of the slave, from the time of the marriage until his wife's death, as the property of his wife and child, vested a title which a court of equity will enforce against his personal representative. Whatever, therefore, may be the rights, of the complainants as against the Swilleys, they are certainly entitled to the slaves which shall be left after the debts are paid for which the Swilleys are bound, and to compensation from Cameron's estate for the value of those sold for that purpose. It was error, therefore, to dismiss the bill without qualification. Larkins v. Biddle, 21 Ala. 257.

II. The Swilleys stand in no better condition than Cameron occupied. His repeated declarations, that the property was not his, but belonged to his wife and child, are evidence against them, and would charge them with notice, even if they were absolute purchasers.—Jennings v. Blocker, and Barnes v. Mobley, *supra.* Complainants'claim a lien on the property through Cameron, not an absolute title from him. Their equity could be enforced against the Swilleys, if they

had a lien by execution; and there can be no difference, in principle, between a lien by execution, and a lien by deed of trust.—Stone v. Hale, 17 Ala. 557; Betts v. Betts, 18 Ala. 787. It is the priority of equity that must prevail.

Independently of these considerations, the evidence shows a state of facts which charges them with notice of the complainants' equity. Whatever is sufficient to put a party upon inquiry, is sufficient to charge him with notice.—Herbert v. Hanrick, 16 Ala. 581; Chapman v. Glassell, 13 Ala. 55; 3 Stew. 233. The answer, though contradictory and disingenuous on the subject of notice, admits that they had heard of the complainants' claim, and sent to South Carolina for a copy of the deed. The words used in the deed, "for the only proper use and behoof of said Nancy," are unusual in a deed of personal property, and, when used in a gift to a married woman, create a separate estate.—Griffith v. Griffith, 5 B. Monroe, 115; Snyder v. Snyder, 10 Barr, 423. These words alone were sufficient to put them upon inquiry; yet the only inquiry made was of counsel who had money to lend to Cameron if they would become his sureties, and who did lend it in consequence of the opinion given to them.—Dart on Vendors and Purchasers, pp. 402–27; 1 Story's Equity, § 399, note 4; 2 Dev. & Bat. Eq. 130, 360; Hardin, 37; 1 Sm. & Mar. Ch. 45.

III. The allegations and proof substantially correspond. and that is sufficient.—Eldridge v. Turner, 11 Ala. 1050; David v. David, 27 Ala. 222. The intention "to bind the property to Nancy and her children," was an intention to give them a joint interest during her life; and the intention expressed by these words, with the further qualification "that the property should not be subject to any man's debts," was to give her a separate estate, so far as her interest was concerned. Fellows, Wadsworth & Co. v. Tann, 9 Ala. 999; Gould v. Hill, 18 Ala. 84; Cuthbert v. Wolfe, 19 Ala. 373; Furlow v. Merrill, 22 Ala. 705; Newman v. James, 12 Ala. 29. But. since Nancy, who was only to have a life estate, is now dead. and her only child is seeking to secure her rights in remainder by a reformation of the deed, the allegations in reference to the separate estate of Nancy are immaterial, and the failure to prove them cannot affect the substantial case made

by the bill. It is wholly immaterial whether those allegations are proved or not; the rights of all the parties being precisely the same in either event, and the defendants not being taken by surprise.—Lanier v. Hill, 25 Ala. 554; Montgomery v. Givhan, 24 Ala. 568.

S. F. HALE, *contra.*—1. Under the allegations of the bill, it was the intention of the donor that the children of his daughter Nancy, as they were born, should take a joint estate with her in the property during her life, with remainder to them at her death, (9 Ala. 999;) while the testimony of the grantor shows, that he either intended to give the slave to his daughter, for her separate use, during her life, with remainder to her children, or intended to create an estate tail; and, in either event, the variance between the allegations and proof is fatal.—Crabb v. Thomas, 25 Ala. 216; McKinley v. Irvine, 13 Ala. 695.

2. The testimony of the grantor is confused, inconsistent, contradictory, and altogether insufficient to authorize a reformation of the deed.—Wall v. Arrington, 13 Geo. 88; Greer v. Caldwell, 14 *ib.* 207; Dennis v. Dennis, 4 Rich. 307.

3. A deed will not be reformed, as against *bona-fide* purchasers for valuable consideration without notice; and the Swilleys occupy that position.—13 Geo. 88; 5 Mason, 270; Lomax's Digest, vol. 2, 380, § 6; Leading Cases in Equity, vol. 2, pt. 1, p. 33, and notes; 9 Vesey, 30; 7 Wheaton, 46; 5 Monroe, 194; 2 Story's Equity, § 959; 9 Barr, 404; 2 Grat. 499; Powell on Mortgages, 654; 2 Swan, 548.

4. Cameron's admissions, during coverture, that the slaves belonged to his wife, were made in ignorance of his rights, and were disavowed when he saw a copy of the deed, as he might lawfully do. That such admission did not create a separate estate in his wife, see Gamble v. Gamble, 11 Ala. 976; Machem v. Machem, 15 Ala. 376; Puryear v. Puryear, 12 Ala. 16; *ib.* 299.

5. If the complainants rely on a gift to Mrs. Lockhart, their remedy is at law.—Jennings v. Blocker, 25 Ala. 415.

STONE, J.—1. Chancery will reform written instruments "only when there is a plain mistake, clearly made out by sat-

24

isfactory proofs."—1 Story's Equity Jur. §§ 155, 157. The proof, if uncertain, will be held insufficient.—Henkle v. Royal Exchange Assurance Co., 1 Vesey, Sr., 317; 1 Story's Equity, §§ 136, 153, 155. See, also, cases referred to on brief of appellees. The complainants have failed to prove the alleged mistake, by that "certain, clear, and satisfactory" proof, which will justify us in reforming the deed. The bill alleges that it was the intention of the grantor to convey the slave to Nancy C.; "for the sole and separate use and behoof of herself, and of any children she might have, so that said slave should not be subject to any rights, debts, or engagements of any husband whom she might marry; and at her death, should be the property of her children." The testimony of Simeon Clay, the only witness who speaks to this point, is contradictory and confused. In one place, he says that his intention was "to bind the property to said Nancy C. Clay and her children forever; never intended the said girl Louisa to be subject to any man's debts, at all; was his intention and desire, that said Louisa and her children should go to said Nancy's children at her death." In another place, he uses this language : "I had given this girl Louisa to Nancy and her heirs." In a third place, he employs the language : "My intention was to entail the property on my daughter and her children." Lastly, he says, "I had made the deed to Nancy, and considered the girl her property." No chancellor could determine what were the real and exact intentions of the grantor.—Rumbly v. Stainton, 24 Ala. 712.

2. If there were no irreconcilable conflicts in the testimony, still we would feel bound to dismiss the bill, so far as this aspect of it is concerned, because of the variance between the allegations and the proof.—Crabb v. Thomas, 25 Ala. 212.

3. The bill in this case is framed in a double aspect. It alleges, in effect, that the slave Louisa was delivered to, and received by Cameron, as the sole and separate property of the wife and her children, and at her death to her children. It further alleges, in effect, that Cameron always, during the coverture, held the property in trust for the wife, and that he did not claim the property in his own right, or exercise his marital rights over it. The testimony substantially establishes this aspect of the bill, except that it proves the under-

standing to be, that the property should belong exclusively to Mrs. Cameron during life, and at her death to her children.

It is conceded that a valid oral gift of personal property may be made, to the sole and separate use of a married woman.—Betts v. Betts, 18 Ala. 787; Crabb v. Thomas, 25 Ala. 212; Jennings v. Blocker, *ib.* 415. But there are two fatal objections to this aspect of the bill: first, the variance between the allegations and the proof; and, secondly, Mr. Clay, by his deed of gift, had parted with all interest in the slave Louisa, as early as 1824, and hence had no power to give a different direction to the property, at the time of the marriage in 1828.—Crabb v. Thomas, *supra.*

4. It is contended that the testimony in this case shows that Cameron never asserted his marital rights over the slaves during the coverture; that he always disclaimed the ownership, and admitted they belonged exclusively to his wife, Nancy; that before and after the death of Mrs. Cameron, he admitted they belonged to Mrs. Lockhart, in remainder. These admissions must be presumed to have been made in ignorance of his rights. They were doubtless predicated on an erroneous construction of the deed of gift. They do not confer any title on Mrs. Lockhart, the daughter. They are ineffectual as a gift, because unaccompanied by any delivery. Neither do the admissions, made after the marriage, vest any title in Nancy Cameron, the wife.—Machem v. Machem, 15 Ala. 373.

5. But when the husband receives the property as the separate property of the wife; holds it openly and avowedly in the same right during the continuance of the coverture, and never, until after her death, attempts to assert his marital rights—his right to the property never does attach, because he never reduced it to possession as husband. It does not vary the case, though he may all the time have acted in ignorance of his right to assume dominion over it. The inquiry in every such case is, not whether the husband had *the right* to reduce the property to possession as *husband,* but whether he *actually reduced it to possession* in that capacity.—Betts v. Betts, *supra;* Machem v. Machem, 28 Ala.

6. This principle can not help the present case. If Mrs.

Lockhart has any rights, they descend to her as next of kin and distributee of Mrs. Cameron, her mother. She can receive them·only through administration on her mother's estate.

Whether in this case, the claim of the Swilleys, or of the administrator of Cameron, will prevail over the rights of the administrator of Mrs. Cameron, we need not now inquire. See Crabb v. Thomas, *supra*.

. The decree of the chancellor is affirmed.