## PAULK *vs.* WOLFE, GILLESPIE & CO.

[BILL IN EQUITY BY WIFE TO PROTECT HER SEPARATE ESTATE AGAINST JUDGMENT
CREDITORS OF HUSBAND.]

1. *How separate estate in wife may be created.*—It is now the settled law of this State, that a separate estate in a married woman may be created by a parol gift of slaves, consummated by delivery.
2. *Power of wife over separate estate.*—In the view of a court of equity, a married woman has the same power over her separate estate, created by contract, as if she were a feme sole, and may transfer or dispose of it at pleasure.
3. *Validity of voluntary conveyance of slaves belonging to wife's separate estate.*—If a married woman, owning a separate estate created by a parol gift of slaves, restores them to her grantor, and then accepts from him a deed, conveying them to her for life, to her sole and separate use, with remainder to her children, her husband's creditors cannot successfully impeach the deed for fraud, although the transaction was intended by the parties to defeat the supposed rights of such creditors.

APPEAL from the Chancery Court of Tallapoosa.

Heard before the Hon. JAMES B. CLARK.

THE bill in this case was filed by Mrs. Martha Paulk, suing by her next friend, against her husband, their children, and certain judgment creditors of her husband; and sought to restrain the creditors from further proceedings at law, to subject to the satisfaction of their several judgments certain slaves, in which the complainant claimed a separate estate for life, with remainder to her children. The complainant's title to the slaves, as asserted in the bill, was derived from her father, Cyrus Billingslea, under a deed of gift, dated January 26, 1855, by which the slaves in controversy were conveyed, in consideration of natural love and affection, to the separate use of the complainant for life, with remainder at her death to her children. The creditors joined in an answer, alleging that the slaves went into the possession of the complainant and her husband, soon after their marriage, under a parol gift from Billingslea; and that the subsequent deed of gift was intended to hinder and defraud the creditors of the husband. A formal answer was put in by the guar-

dian *ad litem* of the children, and a decree *pro confesso* was entered against the husband. On final hearing, on pleadings and proof, the chancellor dismissed the complainant's bill; and his decree is now assigned as error.

CHILTON & GUNTER, for appellant.

BROCK & BARNES, *contra*.

R. W. WALKER, J.—There is a good deal of conflict in the testimony; but we concur with chancellor in thinking that the weight of the evidence establishes the following facts: The complainant, who is the daughter of Cyrus Billingslea, intermarried with Joshua Paulk, in the fall of 1845; and in the beginning of the succeeding year, the slaves in controversy went into the possession of the complainant and her husband, under a parol gift from her father to her, for her separate use. With some slight interruptions, the slaves. remained in the possession of the complainant and her husband, (who, however, always disclaimed any right in himself, and recognized the title of his wife,) until the last of 1854, or the first of 1855, when they were returned to Cyrus Billingslea, who held them until the 26th January, 1855, when the deed under which the complainant claims them was executed. Upon the execution of the deed, the slaves were delivered to the complainant, and have ever since remained in her possession. In 1854, prior to the return of the negroes to Cyrus Billingslea, and the execution of his deed to the complainant, Joshua Paulk, her husband, failed. The debts due from him to the defendants were contracted partly in 1853, and partly in 1854; and some of the judgments founded on these debts were rendered in the fall of 1854, and the rest of them in the spring of 1855. These are substantially the facts established by the evidence.

[1.] That a separate estate in slaves may be created by a parol gift to a married woman, consummated by delivery, has been so often settled by this court, that we are not permitted to consider it an open question.—Crabb v. Thomas, 25 Ala. 212; Betts v. Betts, 18 Ala. 789; Gilles-

pie v. Burleson, 28 Ala. 552; Lockhart v. Cameron, 29 Ala. 355.

[2.] Under the parol gift from her father, the complainant took a separate estate in these slaves, which could not be subjected to satisfy her husband's debts. Over this estate, in the view of a court of equity, she had all the power of a feme sole, and could transfer and dispose of the same at pleasure.—McCroan v. Pope, 17 Ala. 612; Clancy's H. & W. 347; Roper v. Roper, 29 Ala. 251.

We can see no ground on which to doubt the right of the complainant to return these negroes to her father, and afterwards accept from him, in substitution for the absolute property in them which had previously belonged to her, a deed conveying to her only a life estate, with a remainder to her children. If any creditor of hers were injured by the conveyance, he could doubtless set it aside, and subject the entire property to the satisfaction of his debt. But no such pretense is alleged, and no such right asserted.

[3.] It is not unlikely, we think, that the parties did not understand the legal effect of the parol gift from the complainant's father to her; and that the surrender by her of her absolute property in the slaves, and the acceptance of the deed conveying to her but a life estate, with remainder to her children, were prompted by a mistaken apprehension that, in the absence of some written evidence of title, her husband's creditors might subject the property to the satisfaction of their debts. Let it be conceded that the deed was made with the purpose to avoid this result; are the appellees in a condition to avail themselves of the fraud, if in fact this be a fraud? An actually fraudulent intent, in respect to creditors, means that the design of the party was to prevent the application of his property to the satisfaction of debts for which it was or might be legally liable.—See Nicolson v. Leavitt, 4 Sand. S. C. 252. In this case, the most that can be said is, that the deed was made to defeat rights which had no existence, and to injure persons who could not be injured by it. For it is plain that these creditors could not have been prejudiced by this conveyance. They were not the

creditors of either of the parties to it; the property was not in anywise subject to their debts before its execution, and (no matter what were the secret motives of the parties) the conveyance has not, and could not have had the effect of delaying, hindering or defrauding them. A fraudulent deed is fraudulent only as to those who are or might have been injured by it. It is operative as between the parties to it, or as between either of them and a stranger, who is not a creditor or purchaser, and whose rights have not been in any way effected.—Code, § 1554; Wiley, Banks & Co. v. Knight, 27 Ala. 348; Thompson v. Moore, 36 Maine, 47; Randall v. Phillips, 3 Mason, 378; Menx v. Antony, 6 Engl. 411; Stevenson v. Newsham, 16 Eng. L. & Eq. 401.

The complainant is found in the possession of these slaves, under this deed from her father, which is valid upon its face. She will be protected in that possession, against all the world, except those who can show that some rights of theirs in relation to the property were or might have been prejudiced by the conveyance. A mere stranger, whose rights have been in no wise affected, will not be heard to suggest that the deed was fraudulent; and until the *bona fides* of the deed is questioned by some one who has the right to do so, the conveyance stands as valid and effectual.—Love v. Belk, 1 Ired. Eq. 163; Morey v. Forsyth, Walker's Ch. 465; 1 Smith's L. C. 42; authorities *supra*.

The decree is reversed, and the cause remanded.