# WINSTON *vs.* COX, BRAINARD & CO.

[STATUTORY ACTION FOR PENALTY AGAINST OWNERS OF STEAMBOAT.]

1. *Authority of consignee or warehouse-man to receive goods.*—A consignee of goods shipped by steamboat, is the agent of the owner to receive them at the port of delivery, and has authority to receive them at any particular point at that port; and where the bill of lading stipulates for a delivery "unto warehouse or assigns," at a river landing in the interior, the warehouse-man at that landing is the consignee.

2. *Waiver of statutory penalty against steamboat, for landing goods at improper place.*—If goods shipped by steamboat, on an inland river, are delivered to the consignee or owner, and with his consent, at a point less than ten feet perpendicular above the surface of the water at the specified landing, the owner cannot afterwards maintain an action to recover the statutory penalty (Code, §§ 896-7) on account of such delivery.

3. *Cross-examination of witness.*—In cross-examining a witness for the purpose of testing his credibility, it is permissible to investigate his situation in reference to the subject-matter of the suit, his relations

Winston v. Cox, Brainard & Co.

towards the parties, his interests, prejudices, and motives; and where it appears that his testimony tended to relieve himself of the imputation of negligence in connection with the subject-matter of the suit, and conflicted with the testimony of other witnesses, the appellate court will not reverse on account of the latitude allowed in the cross-examination, unless the record plainly shows that an improper indulgence was permitted.

APPEAL from the City Court of Mobile.

Tried before the Hon. HENRY CHAMBERLAIN.

THIS action was brought by Walter C. Winston, against Cox, Brainard & Co., as the owners, and Horace Buckley as the master of the steamboat Cremona, to recover the sum of $4,800, which was alleged to be double the value of certain machinery belonging to the plaintiff, which had been shipped on the defendants' said steamboat, and which they had landed at a point less than ten feet perpendicular above the surface of the water. The only plea was the general issue, and the cause was tried on the issue joined on that plea. It appeared from the evidence adduced on the trial, that the machinery, which consisted of a steam-engine, boiler, and other materials for a steam saw-mill, was shipped by one David, at Mobile, on board of defendants' steamboat, consigned to "warehouse or assigns" at "Tompkins' bluff," a landing on the Tombeckbe river; that the boat reached the landing in the middle of the night, and put off the machinery at a point less than ten feet above the surface of the water; that it was raining at the time, and the river was rising; that the machinery was partly submerged by morning, remained under the water for nearly a month, and was thereby greatly injured. "The defendants offered evidence to prove, that one F. M. Hill, who was the warehouse-man at the landing, came down to the boat about five minutes after she landed, told the officers of the boat that they might put said freight out where it was placed, and expressed himself satisfied after it had been put out."

The deposition of Hill was taken by the plaintiff, and cross-interrogatories were filed on the part of the defend-

ants. Before the trial commenced, the plaintiff moved to suppress the answers of the witness to the cross-interrogatories numbered from four to fifteen inclusive, on the ground of irrelevancy and illegality; but the court overruled the motions, and the plaintiff excepted. The substance of these answers is stated in the opinion of the court, and it is therefore unnecessary to copy them here.

"The court charged the jury, that under the bill of lading, which it was the duty of the court to construe, a delivery to the warehouse-man at the landing was a delivery to the warehouse; that the warehouse-man was the agent of the owner; and that if he received the freight, although it was not placed ten feet perpendicular above the surface of the water, this act would be binding on the plaintiff, and he could not recover."

The plaintiff requested the court to charge the jury—

"1. That if they believed, from the evidence, that the defendants were the owners of the *Cremona* at the time plaintiff's machinery was shipped, to be transported and delivered at Tompkins' bluff; and that the officers of said boat had the machinery landed at said bluff, but did not have it placed ten feet perpendicular above the surface of the water; and that the river was not at that time too high to admit of the machinery being so landed,—then the plaintiff has a right to recover in this action, and would be entitled to recover double the value of the machinery.

"2. That the warehouse-man was the general agent to receive freight, if landed according to the requirements of the law; but that such general agency did not authorize him to consent to receive freight, so as to discharge the owners of the boat from liability, without express authority from the owner of the freight, unless it was landed ten feet perpendicular above the surface of the water; and if he had any such authority, it devolves on the defendants to show it; and if they have failed to make such proof, they are liable.

"3. That if the defendants were the owners of the *Cremona* at the time plaintiff's machinery was shipped on

Winston v. Cox, Brainard & Co.

board thereof, to be transported and delivered at Tomp-
kins' bluff, and the officers of said boat had said machinery
landed at said bluff, but did not place it ten feet perpen-
dicular above the surface of the water, and the river was
not too high at the time to admit of its being so landed,—
then the plaintiff has a right to recover in this action,
unless the jury should be satisfied, from the evidence, that
the machinery was received by the warehouse-man, and
that he was authorized by the owner to receive it, at the
point where it was landed; that this would involve the
further inquiry, whether the warehouse-man was the agent
of the owner, and the extent of his agency; that he was
the general agent, and had the right to receive freight
when delivered according to the requirements of the law;
but that, if said freight was not landed ten feet above the
surface of the water, and the warehouse-man did so receive
it, then, unless he had special authority from the owner so
to receive it, the defendants would be liable; that it is for
the defendants to show that he had such special authority,
and, if they have failed to show it, they are liable for
double the value of the machinery.

"4. That the law requires freight to be landed ten feet
perpendicular above the surface of the water; that unless
this has been done, the defendants are liable, unless the
owner, by himself or his authorized agent, waived this
right; that it is for the defendants to prove this fact; that
the warehouse-man, under his general agency, would have
no right to receive freight not landed ten feet perpendicular
above the water, without special authority from the owner,
and this should be proved by the defendants."

The court refused each of these charges as asked, but
gave the first with the qualification, "that if the machinery
was received by the warehouse-man at less than ten feet
above the water, and he was satisfied, and accepted such
delivery, the defendants would not be liable;" and also
gave the second and third charges, each, with the qualifica-
tion, "that the warehouse-man had authority, under the
bill of lading, to receive the machinery at less than ten

feet above the surface of the water;" to which qualifications, as also to the refusal of the charges as asked, and to the affirmative charge given by the court, the plaintiff reserved exceptions.

The rulings of the court on the evidence, the charge given, and the refusal of the several charges asked, are now assigned as error.

WM. BOYLES, for appellant.
GEO. N. STEWART, contra.

A. J. WALKER, C. J.—Section 896 of the Code requires masters of steamboats and other water-craft to land goods, at the landing for which they are shipped, at least ten feet perpendicular above the water, unless the river is too high to admit of it. The next section prescribes a penalty of double the value of the goods for the failure to place them as required. The main question of this case is, whether the prescribed penalty is avoided, by a delivery at the proper landing to the consignee, and with his consent, at a point on the bank less than ten feet perpendicular above the water.

The consignee, not being an owner, is the agent of the owner to receive the property which is the subject of the consignment, at the port of delivery; and it is the duty of the carrier to deliver to the consignee.—Angell on Carriers, §§ 323, 313, 282, 287, 300, 305, 316; Ala. & Tenn. Rivers Railroad Co. v. Kidd, 35 Ala. 209; Conrad v. Atlantic Ins. Co., 1 Peters, 386, 447.

But it is said, that the law requires a delivery ten feet perpendicular above the water; that the law must be regarded as incorporated into the contract; and that, therefore, the contract must be construed as if it contained an express stipulation for delivery to the consignee ten feet above the water. A concession of that argument does not affect the question. It does not follow that the consignee is only authorized to receive at a point ten feet above the water, because a legal obligation is on the carrier to deliver

at that point.  The statute aims to protect the interests of shippers, by imposing a specified duty upon carriers, to be performed for the benefit of such shippers.    There is nothing in the purpose and spirit of the law, indicating a design to restrict the authority of a consignee at the port of delivery; and certainly no such design could be inferred from the letter of the law.

If the carrier had entered into an express contract to deliver to the consignee at his dwelling-house, it would scarcely be contended, that a delivery, at the request of the consignee, could not be made at his warehouse.   The consignee, having authority to receive at the port of delivery and discharge the carrier, may absolve him from the obligation to deliver at any particular point at the port of delivery, and accept at some other point at that port.   He is invested with the authority so to do by the relation in which he stands to the consignor.   It is conceivable that, in many instances, neither the interest of the consignor, nor the convenience of the consignee, would be promoted by requiring a delivery, against the wishes of the consignee, ten feet above the water.   The general rule, sometimes modified by local usages, is, that the carrier is bound to deliver personally to the consignee at the place of delivery; and this rule is subject to the qualification, that in cases of carriers by ships and boats, and perhaps by railroad, notice given to the consignee of the arrival and place of deposit comes in lieu of delivery.—*Fisk v. Newton*, 1 Denio, 45; Angell on Carriers, § 313.   The great duty of the carrier is safe delivery to the consignee, at the proper port; and it would be strange if, after such delivery is accomplished, the carrier should remain liable.

The consignee, who is, for most purposes, deemed the owner, may waive a full compliance with all the terms of the carrier's contract in reference to delivery ; and his acceptance of the goods is such a waiver.—Story on Bailments, § 541 ; Story on Agency, § 111; *Lewis v. Western Railroad Co.*, 11 Metc. 509 ; 2 Kent's Com. m. p. 605.

The bill of lading contains the stipulation to deliver

18

"*unto warehouse*, or to assigns, he or they paying freight." The warehouse-man at that landing was, under this contract, the consignee.

[2.] A party can not recover a forfeiture allowed him by law, when it was incurred by his consent, and in consequence of his act. He can not take advantage of the nonperformance of an act, required by law to be performed for his benefit, when its performance has been waived by him, or his authorized agent.—*Dunlap v. Clements*, 18 Ala. 778; *Vastbinder v. Spinks*, 10 Ala. 386. If, therefore, the goods in this case were delivered to the consignee, at the proper landing, with the consent of such consignee, less than ten feet perpendicular above the surface of the river, no cause of action in favor of the plaintiff arose.

The necessary conclusion from the principles above stated is, that there was no reversible error in the giving and refusing to give instructions to the jury as stated in the bill of exceptions.

[3.] Assignments of error are made upon the admission of the answers of Hill to the defendants' cross-interrogatories numbered from four to fifteen inclusive The bill of exceptions discloses, that the testimony of this witness was at variance with that of other witnesses upon material points. It was, therefore, important for the defendants, by cross-examination, to test the credibility of the witness. When a cross-examination is employed for this purpose, the rule which restricts the admission of evidence to relevant facts, is not usually applied with the same strictness as in examinations in chief.—1 Greenleaf on Ev. § 449. In such cross-examination, a party may investigate " the situation of the witness with respect to the parties, and to the subject of litigation; his interest, his motives, his inclination, and prejudices; his means of obtaining a correct and certain knowledge of the facts to which he bears testimony; the manner in which he has used those means; his powers of discernment, memory, and description."—1 Greenl. on Ev. § 446; *Scale v. Chambliss*, 35 Ala. 19; *Stoudenmeier v. Williamson*, 29 Ala. 558. This court will not reverse on account

of latitude allowed in such a cross-examination, unless it is plain that an improper indulgence was allowed. We are not prepared to say, that the cross-examination as to the whole of the answer to any one cross-interrogatory was plainly carried to an undue extent in this case; and we, therefore, will not reverse on account of it. The exceptions did not raise any question as to the admissibility of any distinct parts of any answer. We cannot affirm that it was improper for the court to allow the defendant to show that the witness was the warehouse-man; that he received the goods from the boat, and took the bill of lading; together with all facts bearing upon the question, whether he himself had not been guilty of negligence, from the consequences of which a recovery by the plaintiff in this case would contribute to relieve him, and from the imputation of which he would naturally desire to guard. The testimony as to the length of time which expired before the goods were all removed from the place where they were put by the defendant; as to their being carried away by the owner, and found defective; as to a part of them having been under water; as to the presence of boats, and other appliances, which might have been serviceable in removing the goods before the water arose over them; as to his customary mode of receiving goods; and as to his being present in person, and thus having an opportunity to observe the condition of things,—were all matters which related to the question of his own negligence in discharging the duties of his agency for the plaintiff. The answer to the 6th cross-interrogatory was relevant to the material point of the plaintiff's ownership. The answer to the 13th related to the question of the payment of freight, and was relevant, because from the payment of freight acceptance of the goods might have been argued, and the acceptance by the consignee was an important point in the case. We think there was no reversible error in the admission of the testimony objected to.

Affirmed.