(112 So. 806)

## MORSE v. STATE.   (6 Div. 940.)

Court of Appeals of Alabama.   May 10, 1927.

Bumgardner & Wilson, of Bessemer, for appellant.

Charlie C. McCall, Atty. Gen., for the State.
Brief of counsel did not reach the Reporter.

SAMFORD, J. ▮▮ Pleas in abatement and motion to quash the indictment were filed by the defendant alleging that B. M. Skates and J. L. Skates, two of the venire drawn and summoned for the week and from which the grand jury was selected that returned the indictment, did not answer to their names, and were not present at the time the jurors were qualified to serve. This is not borne out by the record. True, it does appear that these two jurors did not appear and answer to their names when first called, but they were not excused by the court, and it affirmatively appears from the record that B. M. Skates and J. L. Skates were among those who were "duly impaneled and sworn according to law and charged as grand jurors." While the two jurors above mentioned did not appear at the time they were first called, it will be presumed that they came into court and were present and qualified as grand jurors. The pleas and motion to quash were properly overruled. Moreover, objection raised by the pleas and motion to quash on the grounds therein named cannot, under the present statute, be sustained. Code 1923, § 5202.

▮ Refused charge No. 6 and refused charge No. 37 were requested upon the theory that the defendant's name was "Moss" and not "Morse," as set out in the indictment, and that this fact was known to the grand jury which returned the indictment. Without entering into a discussion of the many cases where similar questions have been raised, this court holds that M-o-s-s and M-o-r-s-e are idem sonans. The two charges requested were therefore properly refused.

▮▮ The court in its oral charge and in written given charges fully covered the law as to the burden of proof resting on the state, and for that reason the refusal of written charge 9 would not justify a reversal. Moreover, this charge is bad in that it is an argument.

▮ If the defendant was engaged in a difficulty or "scuffle" with another and in such difficulty or "scuffle" fired the pistol which took the life of deceased, his guilt or innocence would depend upon the facts relating to the difficulty in which he was engaged. In other words, as to the instant case, the deceased stands in the place of defendant's adversary in the difficulty in which he was engaged at the time the fatal shot was fired. If the defendant was justified in firing the pistol when and where he did, he would be entitled to an acquittal; but if the facts did not justify the firing of the pistol by defendant, then the fact that he killed an innocent bystander instead of his adversary would not excuse the defendant of the crime charged. Refused charge B was properly refused. 8 Mitch. Dig. 167, par. 17.

▮ The defendant filed a written objection to being required to plead to the indictment because at the time he had not been served with a copy of the indictment. This objection was by the court overruled, but no exception was reserved. Whereupon the court ordered that the defendant be presented with the original indictment, which was done, and to which he pleaded without further objection. This was a waiver of any error which otherwise might have been insisted upon.

▮ The theory of the state was that deceased had been shot and killed with a 32–20 Smith & Wesson pistol, the property of Minnie Leavell, who was a sister of the dead woman. Minnie was examined as a state's witness, and on direct examination testified that she owned such a pistol, had owned it about four months; that she had left it at her home in her dresser drawer about a block and one half from defendant's home; that when she went home after the homicide the pistol was not there. Other testimony for the state would justify an inference that de-

fendant had gone to Minnie's house, gotten the pistol, gone back to his own house where he found Osie, and killed her. The defendant attempted, on cross-examination of the witness Minnie, to have her say where she got the pistol, who she bought it from, and who was with her when she bought it. It became a question of grave importance to defendant as to whether Minnie owned or had the pistol. The state had conceded its relevancy by bringing out the fact of ownership on direct examination, and the defendant had a right on cross-examination to test the truth of this testimony and to lay predicates for its impeachment, if it was found to be untrue. Cross-examination is recognized as one of the surest tests to be applied to testimony, and within proper bounds courts should not interfere where the test is being applied. Winston v. Cox, 38 Ala. 268.

The testimony of the defendant tended to prove that defendant came into his house at about 7 o'clock at night and as he went into his room he grappled with a man; that it was dark; that the man had a pistol in his hand; that defendant grabbed the pistol; that in the tussle the pistol was discharged, the man released his hold on the pistol, ran out of the house through the yard, and escaped over the back fence. It was claimed by the defendant that the deceased was shot by the accidental discharge of the pistol. In corroboration of this statement, the defendant should be allowed to prove the condition of the room, and every fact tending to prove the presence of an unknown man in defendant's room at the time claimed by him. This would include the condition of the mantle piece, the tracks leading from the house to the back fence, and the condition of the fence itself immediately before and immediately after the homicide. All this is a part of the res gestæ. Morrow v. State, 19 Ala. App. 212, 97 So. 106.

We are also of the opinion that the defendant should have been allowed to show facts tending to prove friendly relations, or even affectionate relations, between defendant and his deceased wife to establish the absence of a motive and in illustration of the conduct of the parties at the time of the shooting. Humber v. State, 19 Ala. App. 451, 99 So. 68; Humber v. State, 210 Ala. 559, 99 So. 73.

We have not specifically passed upon each ruling of the court upon the admission of testimony, but have confined the opinion to general rules which should be followed by the court upon another trial. The rulings of the court on the evidence were not in accord with the foregoing opinion, and for that reason the judgment is reversed and the cause is remanded.

Reversed and remanded.