FORREST, et al. *vs* ROBINSON, ex'r.

*As to satisfaction of the bond of a feme covert, out of her separate estate.*

*Upon points of pleading and practice in Equity proceedings.*

1. If husband and wife enter into bond, (not stipulating a promise to pay out of the wife's separate estate,) for the payment of the wife's debt, whilst she has a separate estate, by *anti nuptial* agreement,—Chancery will subject such separate estate to the payment of the bond, upon *proof* that the bond was given for the wife's debt; and without a pursuit of the co-obligor at law.

2. By our statute, a demurrer to a bill in Equity is no admission of the truth of the allegations in the bill; and it is error to enter a decree in a case where the bill has been demurred to without an answer of the defendant, or a decree *pro confesso*.

Error to the Circuit Court of Jefferson, exercising Chancery jurisdiction.

Nelson Robinson, as executor of the last will and testament of William Robinson, filed a bill in Chancery against John F. Forrest and his wife, Mary Ann

Forrest, and James Robinson, trustee, for the purpose of satisfying a bond, signed by the defendants, out of the separate estate of the said Mary Ann.

The bill charged, that on the fourteenth day of March, eighteen hundred and thirty-three, a settlement was had and made between orator, as executor of the last will and testament of said William Robinson, and the said John F. and Mary Ann Forrest; by which settlement, the said John F. and Mary Ann, were found to be indebted, and in arrear to the said Nelson Robinson, as executor as aforesaid, in the sum of twelve hundred and forty-three dollars and sixty-one cents; that in consideration thereof, the said John F. and Mary Ann, executed to orator, a certain instrument in writing, under their hands and seals, in words and figures following, to wit :

" $1243 61—In consideration of a settlement this day had between us and Nelson Robinson, as executor of William Robinson, deceased, by which we fall indebted to him in the sum of twelve hundred and forty-three dollars and sixty-one cents; which we bind ourselves to pay to said Robinson on or before the first day of January next, with interest from date, by the delivery to him of negroes at a fair valuation. Witness our hands and seals, this fourteenth day of March, eighteen hundred and thirty-three.

" JOHN F. FORREST, (Seal.)
" MARY ANN FORREST," (Seal.)

Orator further charged, that the said Mary Ann Forrest, before her intermarriage with the said John F. Forrest, was a Miss Robinson, a daughter of orator's testator; and that the aforesaid settlement was had for the purpose of ascertaining correctly, the

amount that the said Mary Ann and her husband, the said John F. Forrest, were indebted to orator, as executor as aforesaid; and he averred that the sum specified in the said bond was the proper debt of the said Mary Ann,—the said John F. Forrest being only responsible as her husband—the said bond being only executed the better to secure the debt of the said Mary Ann.

Orator charged, that the said Mary Ann, before her intermarriage with the said John F. Forrest, was in possession of considerable real and personal estate; and that in contemplation of her marriage with the said John F. Forrest, the said property was conveyed by marriage settlement to one James Robinson, as trustee, for the separate use and behoof of the said Mary Ann: that the marriage of the said John F. with the said Mary Ann, shortly afterwards was consummated.

Orator further averred, that the said John F. was altogether insolvent, and unable to discharge the said debt specified in the said bond; and that a part thereof was due and unpaid. He, therefore, prayed that the separate estate of the said Mary Ann, so secured by the deed of settlement as aforesaid, should be subjected to the payment of the said bond.

The bill was filed to Fall term, eighteen hundred and thirty-five, and at the same term, the defendants appeared and filed a demurrer to the bill. And at that term, the Chancellor, without noticing the demurrer, as appeared by the record, decreed in favor of the complainant, subjecting the separate estate of the said Mary Ann to the payment of the debt.

The defendants having taken a writ of error here,

assigned as cause of reversal, the following grounds, to wit :

*First*—The demurrer to the bill should have been sustained, and the bill dismissed.

*Second*—There was no equity in the bill ; and it should have been dismissed.

*Third*—The allegations of the bill were not proved.


HOPKINS, J.—From the record of this case, it appears that an *anti nuptial* agreement was made between John F. Forrest, and Mrs. Forrest, who was then Miss Robinson ; according to which, her real estate and personal property were conveyed to James Robinson, in trust, after the marriage should be had ; that he should permit her during her natural life, to have the posseseion, use and control of the real and personal estate, to her separate use, and without the consent of her intended husband, to dispose of the same or any part thereof by deed or other conveyance during the coverture, or to devise and bequeath it as she might think fit, and that it should not be subject to any of the debts or contracts of her intended husband. After the marriage, Forrest and his wife made a bond to the defendant in error, for a sum of money, which they acknowledged in the bond to be due from them upon a settlement between them and the defendant, as executor of William Robinson, deceased, and bound themselves to pay it to him.

The bill was filed by the defendant in error against Forrest and his wife, and her trustee, to subject her separate estate, by a decree of a Court of

Equity, to the payment of a balance which was alleged to be due on the bond.

It is stated in the bill, that Mrs. Forrest is a daughter of the complainant's testator, and that the bond was given for her own debt; but whether the debt was incurred before or after the conveyance of her estate to the trustee, the bill does not disclose.

The defendants demurred to the bill; but it does not appear that their demurrer was acted upon by the Circuit Court. A final decree of the Court was made without proof of any fact, which it was necessary to prove, that subjected the estate to the balance claimed: upon which the defendants sued out a writ of error, and brought the case into this Court.

The plaintiffs in error object to the decree, because there is no equity in the bill. It is necessary, therefore, to enquire of the right in equity of the obligee of a bond made by a married woman, who had, at the date of it, a separate estate, to have the bond satisfied out of her estate. If relief had been asked, in the bill, on the ground the debt was incurred before the estate was conveyed to the trustee, it might have been afforded upon a well settled principle.

There is no remedy at law, against Mrs. Forrest, upon the bond. If the bond contained a covenant to pay out of the separate estate, it would be a charge upon that fund, which no one would doubt the power of a Court of Equity to subject to the payment of the debt. The English decisions on this point, have been deemed by some chancellors and lawyers, to be contradictory. Mr. *Clancy,* in his Treatise on the

rights and liabilities of husband and wife, admits that the "present state of the law in England, on this part of the subject, seems to be this, that if a married woman having separate property, executes a bond or note, or any other instrument, by which she pledges herself for the payment of money, that property will be bound by her engagement, though the instrument which she has signed does not purport to be a lien upon that estate. But on the other hand, if the demand against her arise merely from an implied undertaking, then it can not be executed out of such separate estate." He expresses his own opinion, that correct reasoning does not warrant the conclusion, that such express engagements, without any covenant or promise in them to pay out of the separate estate, are a charge upon the separate estate; and he states four cases, which seem to him to have been decided on principles adverse to it. The decision in each of the cases was, that the price paid for an annuity which was void for some informality of the memorial, was no lien on the separate estate of the wife, who had granted the annuity. The decision might well have been made on the principle which is settled in England, that the separate estate of the wife can not be made liable where her engagement is merely implied, and not reduced into writing. The engagement of the wife to pay back the money she received for the grant of the annuity, the consideration having failed, is implied.[*]

"Clancy's R. of m'r. wom. 331 to 346.

The anti nuptial agreement, in this case, enables the wife to act in relation to her separate estate, in every respect, as if she were sole. As she retained all the rights over the estate, which she would have

4P 7

had as a feme sole, the principle is equitable, we think, that allows a lien upon the estate for her written engagements. It does not diminish the protection of a wife against the power of her husband, which it is the object of such settlements to afford. It is admitted, by those who object to the rule, that her written engagement, containing a promise to pay out of her separate estate, must be deemed a charge upon the estate. If the rule were changed, so as to protect her separate estate against the lien of bonds and other instruments, in which there was no such promise, she could as easily be induced by her husband, to enter into an engagement, containing such a promise, as she may be now, to execute a bond or note.

The rule, which we think is settled, will rarely, if ever, violate the intention of the parties. There have been but few such engagements, in which the creditor did not expect, and the wife intend, that her separate estate should be bound.*

*1Brown's Ch. R 16, also note on p. 18. 2P. Wms. 144; 2Atk. 69; 15 Ves. 596; 17 ib 365; 2Mer. 483.

As the bond does not bind the person of the wife, and gives the creditor no lien upon the estate but in equity, it was not necessary to pursue the remedy at law against her co-obligor, if it be true, as stated in the bill, that the debt is her own. To require him to pay it, would not be equitable. If she were his surety in the bond, the principle would be acted upon, which defers the exercise of the power of a Court of Equity to make assets, which can not be reached at law, liable for debts, until the creditor could state in his application for aid, that at the legal end of his pursuit of the remedy at law, he did not get his due.†

†1 Brown's Ch. R. 18, note.

The statute law directs, " that when a demurrer

FORREST, et al. *vs* ROBINSON, ex'or.

to a bill is overruled, the defendant who took it shall pay costs thereon, file a sufficient answer and go to trial forthwith, if the complainant require it; otherwise the bill shall be taken *pro confesso*, and an attachment issue to compel an answer."* The con ·struction of the part of the statute to which we have referred, is, that when a demurrer is overruled, the cause is not ready to be finally heard, and that the demurrer itself is not an admission of the truth of the allegations in the bill.

*Aik. Dig. 287.

It was an error to make the decree before the cause had been brought, by an answer of the defendants, or a decree *pro confesso*, into a condition to be finally heard; nor ought the decree to have been made, without proof that the bond was for the debt of the wife.

Let the decree be reversed and the cause remanded.