## GLENN *vs.* GLENN.

[BILL IN EQUITY BY WIFE, AGAINST HUSBAND, TO ESTABLISH RESULTING TRUST
IN HANDS.]

1. *Conflict of laws, as to property rights of husband and wife, under marriage celebrated in South Carolina, with intention to reside in Alabama, where husband was domiciled.*—A marriage, contracted and celebrated in the State of South Carolina, between a man, a citizen of th·s State, domiciled in this' State, with a woman, a citizen of the former State and residing there, with the intention of coming immediately to this State, to reside at the husband's domicile here, will be treated in our courts as a marriage contracted in this State, for the purpose of regulating the marital rights of both parties ; and the marital rights of the wife will be regulated by the laws of the husband's domicile, if there is no marriage contract.

2. *Same, as to property afterwards bequeathed and devised to wife in South Carolina.*—Property, given to a married woman domiciled with her husband in this State, who is a citizen of this State, by the will of her father, in the State of South Carolina, in 1848, since the passage of the act of the general assembly of this State, approved March 1, 1848, entitled "An act securing to married women their separate estates, and for other purposes," for her sole and separate use and benefit, during her natural life, is to be taken, held, and esteemed here, as the separate property of the wife to the extent of her estate therein, under the law of this State regulating the "separate estate of wife," as found in the Code of Alabama.—Pamph. Acts, 1847–48, p. 79 ; Code, §§ 1993, 1997 ; Rev. Code, §§ 2382, 2388.

3. *Resulting trust for wife declared, in lands purchased by husband with money belonging to her statutory separate estate.*—If the husband takes possession of the wife's property so given to her in South Carolina, and converts the same into money by a sale there, and afterwards brings the money thus obtained to this State, and vests it in the purchase of lands here, but takes the title in his own name, a trust results to the wife in such lands so purchased by the husband with her money, which will be enforced at the suit of the wife against the husband in a court of chancery, to the extent of the wife's money so invested, and interest thereon, if the husband makes no objection as to the interest. *Robison v. Robison,* 44 Ala. 227.

APPEAL from the Chancery Court of Barbour.
Heard before the Hon. N. W. COCKE.

The facts are sufficiently stated in the opinion.

RICE, SEMPLE & GOLDTHWAITE, for appellant.
JNO. GILL SHORTER, *contra.*   (No briefs on file.)

PETERS, J.—This is a suit in chancery, filed by Mrs.
Glenn, against her husband, Massillon M. Glenn.   The bill
and amended bill show, that Glenn, a citizen of this State,
domiciled here, married Barbara W. Herndon, a citizen of
the State of South Carolina, and then resident in that
State, on December 26, 1839.   The marriage took place in
South Carolina, but with the intention to reside at the
husband's domicile in this State; and immediately after
the marriage the husband returned to his home here, and
the wife came with him, and both have resided here con-
tinuously since.   They have never domiciled out of this
State since the marriage, but have lived here as citizens of
this State.   On the 9th day of August, 1848, Stephen
Herndon, the father of Mrs. Glenn, made his will in South
Carolina, the place of his residence and domicile at the
time, and died there.   The will thus made and published
was properly proved, and admitted to record, in said State
of South Carolina, on October 11th, 1848, and administra-
tion of his estate was there commenced "under said will."
By the third article of said will, the testator gave to his
daughter, Mrs. Glenn, certain personal property, consist-
ing of a number of slaves, and also several tracts of land,
lying in the State of South Carolina.   Mrs. Glenn was
then a citizen of this State, residing here with her said
husband.   The gift is to her "for her sole and separate use
during her natural life, and at her death to be equally di-
vided between the children she may leave, or their lawful
heirs."   The will is made an exhibit to the bill.   And it is
further alleged, that at the time said testator made and
published his said will, he had knowledge of "the provis-
ions of the act of the legislature of this State for the ben-
efit of married women," approved March 1st, 1848, and
then in force in this State; and that he "made said devises
as contained in said third clause of said will to complain-
ant with a knowledge of said act, and with the intention
thereby to secure" to her "the full benefit of the provis-

ions of said act in said devise of said real and personal property." It also appears that Glenn, the husband, took possession of the property thus given to Mrs. Glenn, and sold the lands in January, 1849, for the sum of $6,450, and one of the slaves for $1,350, and a carriage for $200, making in all the aggregate sum of $8,000. And in January, 1850, the husband, said Glenn, purchased certain lands in this State, to-wit: Section 5, in township 13, and range 29, for the sum of $2,020, which was paid for with funds derived from his wife's said. separate estate given to her by her father as above said; and afterwards, he exchanged the lands last above said for the west half of section 1, and the east half of section 2, all in township 13, and range 28, lying in Barbour county, in this State. This exchange was made in January, 1854. And in April, 1856, said Glenn, said husband, purchased the west half of section 2, in township 13, and range 28, for the sum of $3,200, and paid for the same with moneys belonging to the separate estate of his said wife, derived from her father's will, as above shown. In May, 1858, said Glenn, said husband, purchased a part of the northwest quarter of section 1, in township 13, and range 28, for $1,280, of which last named sum he paid $938 of the moneys belonging to his said wife's said separate estate. All of said lands so purchased as above said are situated in this State, and the titles to the same were taken in the name of said Glenn, said husband, and not in the name of his said wife, or for her use. It is also alleged that Mrs. Glenn did not consent to the sale of her said personal property in the State of South Carolina, but the same was sold against her wishes. It is likewise shown that, during the years 1850, 1853, 1857, and 1858, said Glenn, said husband, appropriated the sum of $8,000, realized from the sale of Mrs. Glenn's separate estate derived from the will of her said father as above said, and that he invested the same in purchase of the lands above mentioned, and in putting improvements on the same, and that said sum is justly due her, with interest thereon from the date the same was received by him. The prayer of the bill is for general relief,

and for an account against the husband for the wife's funds received by him of her separate estate; and that the title of the lands purchased by the husband with her funds of her separate estate be divested out of the husband, said Glenn, and vested in the next friend of the wife, to be held to answer the purposes of the original separate estate created by said will. The husband answered the bill and the amended bill, and admits all the allegations of each, and makes no objection to the relief asked. On the hearing, the learned chancellor decreed that the complainant, Mrs. Glenn, was entitled to "a resulting trust in the west half of section two, in township thirteen, and range twenty-eight, lying in Barbour county, in this State; and divested the title to the same out of the defendant, and vested the same in "E. Herndon Glenn, in trust for the sole and separate use of the complainant, Barbara W. Glenn;" and taxed the husband with the costs, and refused all other relief. From this decree the wife, Mrs. Glenn, appeals to this court, and assigns the decree below for error.

The domicile of Glenn, the husband, being in this State at the time of the marriage, and the purpose of himself and his wife being to reside here immediately after the marriage was celebrated in South Carolina, the marital contract will be regarded as a marriage entered into in this State, and as one subject to our laws.—*Ford's Curators v. Ford*, 14 Mart. p. 514; Story's Conflict of Laws, p. 300, §§ 198, 199. Such a contract is under the legislative control of this State. It can not invoke the protection of the clause of the constitution of the United States, or the constitution of this State, which forbids the State to pass any law impairing the obligation of contracts previously entered into. Such a contract the State may dissolve, or modify, by legislative enactment, if it chooses.—Const. U. S., Art. 1, § 10, cl. 1; Pasch. Const. U. S., pp. 31, 153; Const. of Ala. 1867, Art. 1, § 24; Art. IV, § 30; 1 Bish. M. & Div. § 669. Where the State is not fettered by some constitutional limitation, its legislative power is absolute, and only controlled by its wise discretion.—Cooley on Const. Law, pp. 28, 87, 168, 172.—*Sill v. Corning*, 15 New

York Rep. 303; *Dorman v. The State*, 34 Ala. 216, 232. There can be no doubt, then, that the legislature may confer upon a married woman the rights of a *femme sole* as to all her future acquisitions after the passage of the law, or from some specified day; because there is no constitutional restraint to forbid this.—See *Edwards v. Pope*, 3 Scam. 465, 469. And such has been the constant practice in this State, since its admission into the Union, up to the present day.—*Carleton & Co. v. Banks*, 5 Ala. 32; Revised Code, §§ 2394, 2395; Pamph. Acts, 1853–54, p. 225; Pamph. Acts, 1869–70, p. 103, No. 121; Pamph. Acts, 1870–71, pp. 105, 108, Nos. 293, 294; Pamph. Acts, 1847–48, pp. 100, 416, 417, 418, 419, 422. Mrs. Glenn was a married woman, and a citizen of this State, on the *first* of March, 1848. The statute of the date last mentioned threw its protection over all the married women of this State, and "*secured*" to them their property acquired after its passage, as their separate estate, under that act, by whatever title it might have been received or held. This statute was followed by the act of February 13, 1850, and this latter act was followed by the Code of Alabama, and that by the Revised Code. The act of February 13, 1850, repeals "all laws and parts of laws in conflict" with it. Pamph. Acts, 1849–50, p. 65, § 11. And the Code does the same.—Code, § 10, *ad finem;* Acts, 1853–54, p. 71, No. 87. Then, the sole law regulating the separate property of the wife, now in force in this State, is that which is found in the Code. There can be no such thing as two systems upon this subject here, since the Code went into operation. And the provisions of the Code take effect, and are operative on the estates of *all married* women in this State, who have been married, or who have *received* property by descent, gift, or *otherwise*, since the first of March, 1848; and the same must be governed by the rules, regulations, and limitations contained in the Code for the regulation of the separate estates of married women.—Revised Code, §§ 2388, 2382. This is a law in favor of the weak, against the strong; it overturns the policy of a semi-christian and a barbarous age, and substitutes in its

stead a policy of justice to the citizen deprived of the usual means of self-protection through the ballot-box. It should, therefore, be most liberally construed. It simply does justice to the weaker sex. And the law favoreth charity.—Wingt. Max. 135.

I am aware that our learned and very able predecessors are supposed to have construed this great statute, which is now in substance the constitution of this State, in somewhat a different light; that they have spoken of " contract estates" and " statutory estates" of married women as different things, since the Code went into effect. I am unable to see the basis of this distinction, where the property has been given directly to the wife. The Code operates upon all estates of married women, *held* by them, or to which they *have become entitled*, in any manner, since the first of March, 1848. All other laws regulating such estates, accruing since that date, are repealed. They do not exist in this State. Since the day above named, all estates of married women, where the title is not in a trustee for the use of the wife, are controlled by the statute, and are so far statutory separate estates.—Const. of Ala. 1867, Art. XIV; Rev. Code §§ 2371, 2382, 2388 ; Pamph. Acts. 1849–1850, p. 64, § 11; Rev. Code, § 10. Nevertheless, there may be estates conveyed to a trustee, for the use of a married woman, in which the trustee is the owner, and the married woman is merely the usee. Such estates are held under the contracts creating them, as at common law.—*Molton v. Martin*, 43 Ala. 651 ; *Sprague v. Tyson*, 44 Ala. 339.

Under this construction of the statute, Mrs. Glenn was entitled to the property which had accrued to her since the first of March, 1848, as her statutory separate estate. This is the case of the property involved in this suit. Besides, the bill shows that, it was the intention of the testator that she should so hold it. This the husband admits, and acquiesces in her claim. He sets up no right in himself to the estate, which she claims. He is, therefore, to be treated as her trustee.—Rev. Code, § 2372. He can not waste the *corpus* of her estate. If he has invested her funds in lands in this state, she is entitled to the lands, if she choose so

to elect, and he is unwilling or unable to refund her money so invested by him.—*Marsh v. Marsh, adm'r*, 43 Ala. 678 ; *Robison et al. v. Robison, pro ami.*, 44 Ala. 227 ; *May v. LeClaire*, 11 Wall, 217, 236. He can not be permitted, as between her and himself, to defeat her rights by a conversion of her property and a change of the title to himself. *Sampley v. Watson et al.*, 43 Ala. 377. Under the civil law, if the husband disposed of his wife's "*moveables*," during the marriage, his estate was bound to account to her for them, on his death or the dissolution of the marriage ; and all her "*immoveables*" came back to her. The husband only had the use during the marriage. Judged by these principles, the decision of the learned chancellor of the court below was not free from error. It must, therefore, be reversed and remanded, with instructions to proceed in the further disposition of the cause in conformity with the principles laid down in this opinion.

The decree of the court below is reversed, and the cause is remanded. The appellee, said Massillon M. Glenn, will pay the costs of this appeal in this court, and in the court below.