# Short *v.* Battle.

### *Bill in Equity to enforce Vendor's Lien.*

1. *Equitable separate estate; what creates.* — A conveyance of real and personal property to a married woman "absolutely and in her own right" to have and to hold "to her, her heirs and assigns, for her own separate and absolute use and behoof forever, in fee simple," creates an equitable separate estate. (Overruling on this point *Molton* v. *Martin,* 43 Ala. 651; *Glenn* v. *Glenn,* 47 Ala. 204; *Denechaud* v. *Berry,* 48 Ala. 591.)

2. *Same; rights of wife as to.* — The wife must be regarded in equity as a *feme sole* with respect to her equitable separate estate, having capacity to bind or charge it by her contracts, and to alienate or otherwise dispose of it. She may mortgage it as security for her own debt, or that of another.

3. *Equitable separate estate; what construction determines.* — Where by the gift or devise the intent to exclude the marital rights of the husband clearly and unequivocally appears from the force and certainty of the terms employed, an equitable separate estate is created.

4. *Statutory separate estate; what construction determines.* — Where the intent to exclude the marital rights of the husband is doubtful or equivocal, or rests on speculation, the statute intervenes and fixes the character of the estate as the separate statutory estate of the wife.

5. *Mortgagee; when treated as bonâ fide purchaser.* — Where a mortgage is made as security for a debt, contracted cotemporaneously with it, the mortgagee becomes a *bonâ fide* purchaser, entitled to protection against an outstanding vendor's lien of which he had no notice.

APPEAL from Chancery Court of Macon.

Heard before Hon. B. B. McCRAW.

The material facts of this case as gathered from the bill, and an agreed state of facts which it was consented might take the place of answer, are as follows : —

The appellee, A. J. Battle, being seized in fee of the house and lot in controversy, agreed with Cullen A. Battle and John Gill Shorter that the three should make an equal contribution and give the house and lot, together with a small amount of personal property, to Mrs. Jane Battle, who was the mother of the two former, and mother-in-law of Shorter. In pursuance of this agreement the appellee, on the 27th day of July, 1867, sold and conveyed a two thirds interest in the premises to Cullen A. Battle and John Gill Shorter, they each executing to appellee their promissory notes for the purchase-money. On the same day the three, in consideration of five dollars, and the further consideration " of natural love and affection, and for the purpose of securing to her a comfortable residence and home for herself, and family, and friends, absolutely and in her own right " conveyed the premises to Mrs. Jane Battle, " to have and to hold to her, her heirs and assigns, for her own separate and absolute use and behoof forever in fee simple." In November, 1868, Mrs. Jane Battle, her husband, and Cullen A. Battle executed a mortgage on the premises to Robert H. Short, to secure a debt contracted cotemporaneously with it by Cullen

VOL. LII.

[Short *v*. Battle.]

A. Battle. Short had no notice that the purchase-money was due or unpaid on the land at the time he took the mortgage. In December, 1869, Cullen A. Battle and Shorter having become unable to pay their notes to A. J. Battle, Mrs. Jane Battle and her husband reconveyed to him by quitclaim deed, "in consideration of his equities, and the surrender and cancellation of the notes to Cullen Battle and Shorter. In 1871, Short was proceeding to sell the land for the payment of the mortgage debt in pursuance of the power of sale given therein," when the appellee, A. J. Battle, filed his bill, alleging that although the notes were given up, the purchase-money has never been paid; that Short was charged with constructive notice that Mrs. Battle had not power to sell the property or mortgage it for the payment of the debt of another, and that the mortgage to him is a cloud on the title, &c. A perpetual injunction is prayed against a sale under the mortgage; and also that the notes be reëstablished, and the amount due for the purchase-money be declared a lien upon the land, and the same sold for its payment, or that the sale and reconveyance from Mrs. Jane Battle be confirmed, as may be equitable under the facts.

The court overruled a demurrer interposed by Short, the only defendant who contested the relief sought, and decreed a sale of the lands for the purchase-money, holding void the mortgage conveyance to Short, who appeals, and assigns the decree for error.

GRAHAM & ABERCROMBIE, for appellant.

STONE & CLOPTON, *contra*.

BRICKELL, C. J. — On the 25th July, 1867, a conveyance of real and personal estate was made to Jane A Battle, a married woman, by her two sons and her son-in-law, in consideration of love and affection, to secure to her a comfortable residence, "absolutely and in her own right." The *habendum* of the conveyance is as follows : " To have and to hold unto her, the said Jane A. Battle, her heirs and assigns, the said house and lot, and the said household furniture and lot property, horses and carriage, for her own separate and absolute use and behoof forever, in fee simple." A question decisive of this case is, whether the estate created by this conveyance is to be deemed and taken as a statutory, or as an equitable separate estate ? If the former, the appellant, by the mortgage under which he claims, acquired no right or interest in the premises. If the latter, the mortgage is a valid security for a debt created cotemporaneously with its execution; and the appellant is entitled to protection against outstanding equities of which he had no notice.

The common law though regarding marriage as a civil con-
tract distinguished it from other civil contracts, by treating it
as the formation and foundation of a connection the parties by
their own consent were incapable of dissolving. This connection
involving the duty of living together, in the nature of things,
"the power of umpire must be placed in the hands of the one
or other of them." 1 Bish. Married Women, § 888. This
power was committed to the husband: the husband and wife
were regarded as one person, and her legal existence and au-
thority in a degree lost or suspended, or as it was sometimes
expressed, merged in that of the husband. She had not capac-
ity to contract, nor had she administration of property. By
the marriage, if the wife was seized of an estate of inheritance,
the husband became seized thereof, taking the rents and profits
during their joint lives, and by possibility during his life. If
the wife had an estate of freehold, not of inheritance, as for her
own life, or the life of another person, the husband became
seized of such estate, and entitled to the rents and profits dur-
ing marriage. If the estate was *per autre vie*, the husband
surviving the wife became a special occupant of the land during
the life of such person. Her chattels real passed to the hus-
band, who had power to sell, assign, or make other disposition
of them at pleasure. As to her choses in action, he had an
unqualified right of reducing them to possession, and thereby
acquiring absolute ownership of them. He could sue for and
recover, release, discharge, or assign them. If without receiv-
ing them, or changing or altering their character, he died, his
right of reducing to possession, springing out of and dependent
on the marital relation, terminated with its dissolution. Of
her personal property in possession, *eo instanti*, the marriage,
title and possession passed to the husband. So of personal
property, title and possession of which accrued to the wife
during marriage, the possession of the wife was the possession
of the husband; "because her legal existence is merged in his,
and the wife is positively incapable of a possession, in the eye
of the law, distinct from that of the husband." *Bell* v. *Bell*,
37 Ala. 541.

Although the husband acquired rights, he was subjected to
duties and responsibilities; and though the legal existence of
the wife was lost in that of the husband, compensation was
afforded her, in relieving her from duty and responsibility. The
wife not being *sui juris* was not subject to suit, and her hus-
band became liable for her debts contracted prior to marriage,
if they were enforced during coverture. He was answerable
for them, not because he had received her fortune, for he may
have received nothing, but because after marriage the wife was
not *sui juris*, — had not a legal existence. The husband was

[Short *v.* Battle.]

bound to maintain her, — to supply her with necessaries suitable to her wants, and to his condition in life. If he failed, she could obtain them on his credit, and he was bound to pay for them. There was no event in which the husband, by his own act or contract, could fix a debt or liability on his wife, whatever may have been her dereliction of duty. For his torts or frauds she could never be made liable, though committed in her presence, and under the pressure of coercion from her. For her torts and frauds the husband was answerable, and if committed in his presence, and by his command, he alone was liable. The child could not be relieved from liability for torts or frauds, because the father was present commanding or inciting to their commission. The wife could enter into no contract, however meritorious its consideration, which had legal obligation. If she survived her husband, and did not ratify or confirm, it was void. The husband was bound to protect her, and if protection demanded a resort to legal remedies, and he failed to assert them, lapse of time would not bar her, and statutes of limitation were generally so framed, that during coverture she was exempt from their operation. The protection of the wife — the preservation of the harmony of the marital relation —was the principle on which the common law proceeded. It had its origin in the habits, thoughts, and opinions of the people subject to it. As these changed, gradual changes of the law were wrought, accommodating the one to the other.

Resting on this principle, it was the policy of the common law to favor the marital rights of the husband. The courts of common law looked steadily to, and took cognizance of legal titles only. The separation of the use and enjoyment, and of the beneficial ownership of property, as distinct from the legal title, had its origin in the doctrine of trusts, which were the subject of the exclusive jurisdiction of a court of equity. From this doctrine springs the separate estates of married women, often denominated common law separate estates, rather because they had been so long known and recognized at common law, as existing in courts of equity, than because they rest on any common law principle. The simplest form of a trust would be the conveyance of an estate to A. for the use and benefit of B. In a court proceeding on common law principles only, A. would hold the legal title, and could take the rents and profits without liability to B. In a court of equity he would hold the legal title as a trust only, that it should not be asserted to the injury of B., and to him he would be compelled to account for the rents and profits. A trustee not being interposed, a gift, devise, or conveyance to a married woman for her sole and separate use, free from the control of her husband, created a trust, and this trust was her separate estate. Incapable of acquiring or

holding property at common law, and the title to all property enuring to her during coverture, vesting in her husband, the legal title vested in him, but as a trustee only. The trust for the sole and separate use of the wife was as chargeable on his conscience as if the conveyance, gift, or devise had been to him for the use and benefit of a stranger. To the creation of this trust — of this equitable separate estate of a married woman — no particular language, no technical form of expression, was necessary. It was enough that there was manifest an unequivocal intent to exclude the rights of the husband — to vest in the wife the exclusive use and enjoyment. This intention being apparent, it was supported and carried into execution. A conveyance in the form of the one now under consideration, for the separate and absolute use of the wife, it was never doubted, would exclude the marital rights of the husband, and create in the wife an equitable separate estate.

Departing from the common law principle, of the incapacity of the wife to take and hold property, it was, according to the authorities which have prevailed in this court, a logical and legal sequence, that as to such property the wife should be regarded as a *feme sole*, having capacity to contract, alienate, or otherwise dispose of, or to charge it, unless restrained by the instrument creating the estate. *Forrest* v. *Robinson*, 4 Port. 44; *Bradford* v. *Greenway*, 17 Ala. 797; *McCroan* v. *Pope*, Ib. 612; *Collins* v. *Rudolph*, 19 Ala. 616; *Booker* v. *Booker*, 32 Ala. 473; *Paulk* v. *Wolfe*, 34 Ala. 541; *Gunter* v. *Williams*, 40 Ala. 561.

Applying this principle to the present case, if it is determinable according to the principles by which it would be determined in the absence of statutory provisions, the result would be that the grantee, Mrs. Battle, has a separate estate in the premises. This estate she was capable of alienating as if she were a *feme sole*, and of consequence, charging it by mortgage, as a security for her own debt, or that of another. The mortgage being made as security for a debt contracted cotemporaneously, the mortgagee becomes a *bonâ fide* purchaser, entitled to protection against the equities of the appellee, of which he had not notice. The mortgage security enters into the consideration on which the credit is given. *Wells* v. *Morrow*, 38 Ala. 125.

We now reach the difficult question presented. Is this estate subject to the statutes defining the separate estates of married women, — their mode of enjoyment, the rights and powers of the husband and of the wife over them, the extent to which they are alienable, or liable to be charged, and the course of their descent and distribution? This question was answered by a series of decisions in this court, in which it was

[Short v. Battle.]

the subject of patient, careful, and thorough consideration, announcing that these statutes "relate to and provide for estates of married women which are made separate by operation of law; estates are created by descent, gift, or in some other manner, *without words which would have created a separate estate before our statutes on the subject; and not to estates which, independent of legislation, would have been separate by operation of the instrument or contract creating them.*" *Pickens* v. *Oliver*, 29 Ala. 528; *Cannon* v. *Turner*, 32 Ala. 483; *Cowles* v. *Morgan*, 34 Ala. 535; *Huckabee* v. *Andrews*, Ib. 646; *Smith* v. *Smith*, 30 Ala. 642. The argument of the question was exhausted in these decisions. They were accepted by the profession, and acted upon by the community, as a conclusive and definitive exposition of the law. In reliance upon them contracts were made, credit was extended, and estates alienated, or subjected to charges by way of mortgages or other security for debts. Though these decisions have not been expressly overruled, there have been since several decisions announcing a different and antagonistic rule. They commence with the case of *Molton* v. *Martin* (43 Ala. 461), in which it is held that a conveyance to the wife in terms which would have created a separate estate at common law creates a statutory estate.

The former decisions are not referred to, and the theory of the opinion, is thus stated : " The deed conveys the property of Mrs. Molton, to her sole and separate use and behoof. Before the Code, the terms of this conveyance would have excluded the marital rights of the husband, and given the wife such an interest in the property as she could have charged by her simple promissory note. But § 2371 Revised Code makes all property of the wife, held by her previous to the marriage, in any manner, the separate estate of the wife, not subject to the payment of the debts of the husband. Is there such an opposition in the terms of the deed and those of the statute that both cannot stand together ? What is the difference between the separate estate of the wife, not subject to the payment of the debts of the husband, and an estate of the wife to her sole and separate use and behoof ? Is there such an evident intention expressed in this deed to change the tenure of the estate, as to overcome the denial of the answer," &c. We have quoted all that is said on this point in that case.

The statute, so far as this opinion refers to it, simply declares : " All property of the wife, held by her previous to the marriage, or which she may become entitled to after the marriage, in any manner, is the separate estate of the wife, and is not subject to the payment of the debts of the husband." If it is conceded a conveyance, expressed in the words of the

statute, — declaring the property conveyed the separate estate of the wife, nòt subject to the payment of the husband's debts, — would under the law existing prior to the statute have created in the wife an equitable separate estate, the question would remain, what are the qualities and incidents of this estate — what its tenure, and the power of the donee over it? If the statute had merely contained the declaration we have quoted; if it had not gone further, and defined the nature, quality, and incident of the estate declared separate; if it had not prescribed the power of the wife over it, and clothed the husband with an interest in it, inconsistent with the nature and quality of an equitable separate estate, — the estate it creates would have been controlled by the law controlling and defining the equitable separate estate, — it would have been that estate ànd no other. A statute converting an estate tail — an estate to A. and the heirs of his body — into an estate in fee-simple, leaves the nature and quality of an estate in fee-simple to be ascertained from the common law. A statute declaring only that the property of the wife shall be her separate estate, leaves the nature and quality of the estate to be regulated and controlled by the prevailing law operating on such estates. All statutes are construed and read in the light of, and in connection with, the common law, and of the fact that its principles remain of force, unless directly repugnant to the statutory provision.

The first statute creating separate estates in married women, approved March 1, 1848 (Pamph. Acts 1847–8, p. 79), was, as to the tenure of the estate, more specific in its language, though not variant in legal effect, from the present statute. It not only declared the property of the wife, whether owned by her at the time of the marriage, or subsequently acquired, should be her separate estate, but further that it should be taken, held, and esteemed in law " for her sole and separate use, notwithstanding her coverture; and no husband shall by his marriage acquire a right to the property which his wife had upon his marriage, or which she may after acquire by descent, gift, devise, or otherwise, except as hereinafter provided for." The power of the wife over this separate estate was not defined; of her capacity to charge it, the statute was silent. In *Hooper* v. *Smith* (23 Ala. 639), it was held, that the wife could charge, sell, or dispose of the estate the statute of 1848 created, without the consent or concurrence of her husband; that as to her capacity of disposition, in nature, quality, and incident, it was an equitable separate estate. If the present statute was in terms similar to that of the statute of 1848; if it did not define the extent of the wife's capacity to dispose of her separate estate, though the terms in which

the estate is created are not in opposition to, but precisely the terms in which an equitable separate estate could be created, her power of disposition over the one would be the same she has over the other. ˙ The inquiry is not, of consequence, whether the terms of a conveyance and of the statute are in opposition, but whether, when the terms of a conveyance create an estate, the nature, quality, and incidents of which are well defined by law, the statute intervenes, and not only destroys these, but attaches a nature, quality, and incident wholly variant?　Or, is not the statute confined in its operations to estates, the nature, quality, and incident of which is not defined in the conveyances creating them?　It cannot be supposed the statute is designed to affect the capacity of a donor to devolve on a woman, married or sole, any estate not prohibited by law — or to diminish the capacity of the woman to take.　The donor may create, and the donee may take since the statute, any estate which could be created or taken prior to its enactment. The statute affects and impairs only the marital rights of the husband.　When an equitable separate estate is created by a gift, conveyance, or devise, an estate is created differing in nature and quality from the estate of the wife under the statute.　Differing in nature and quality, though there may be no opposition between the words of the statute and the terms in which the other is created, the two cannot stand together.　Of the wife's equitable separate estate the husband cannot take the rents, income, and profits, against her consent.　It is not chargeable with his debts, even when contracted for necessaries for the household.　It cannot be made liable for the wife's own maintenance, except by her own contract.　On her death, it passes to her heirs or next of kin, subject only to the husband's tenancy by curtesy of the real estate.　Its value is not computed in ascertaining the wife's dower and distributive share of the husband's estate, if she survive him.　She has capacity to charge it, or to alienate it, larger than she can exercise over the estate the statute creates.　The two estates have no features in common, except that each exclude the marital rights the common law conferred on the husband, and of consequence are freed from liability for his debts, and from the want of purity and precision of legal expression, they have been indifferently called separate estates.　In respect to liability for the husband's debts, the equitable separate estate is freed entirely, and the statutory estate is subjected to a limited liability, for debts contracted for articles of comfort and support of the household.　This liability cannot be fixed on the equitable separate estate, an indispensable element of which is freedom from all liability for the husband's debts, though contracted for the wife's exclusive benefit, and she was the sole recipient of the

consideration. *M. E. Church* v. *Jacques*, 3 Johns. Ch. 77; *Gunn* v. *Samuels*, 33 Ala. 201. The inquiry therefore is not whether there is any inconsistency between the terms employed in the statute declaring of what the wife's separate estate consists, and the terms of a conveyance creating an equitable separate estate, but whether, when an equitable separate estate is created by conveyance, the statute can intervene, and convert the estate thus created into an estate wholly different in its nature and quality? If it can, it must be because it abolishes the estates the conveyance creates, and substitutes another for it, as does the statute abolishing estates tail, or, speaking more properly, converting them into fees-simple. Such has never been supposed to be the operation of the statute.

The decision in *Molton* v. *Martin, supra*, was succeeded by the case of *Glenn* v. *Glenn* (47 Ala. 204), in which a devise to a wife, "*for her sole and separate use during her natural life, and at her death to be equally divided between the children she may leave, or their lawful heirs*," was construed as creating a statutory estate. The court allude to the former decisions distinguishing the statutory estate from the equitable separate estate, but declare an inability to see the basis on which the distinction rests. It was held the statutes repealed all laws regulating equitable separate estates, superseded them, and substituted the statutory estate in all cases, except where a trustee was interposed. The case of *Denechaud* v. *Berry* (48 Ala 591) asserts the same doctrine on the same reasoning. We are not informed why the mere interposition of a trustee excepts the estate from the operation of the statute. If the exception exists, it is not because the statute expressly declares it, but it arises from construction, and is dependent on the reasoning pursued in *Sprague* v. *Tyson* (44 Ala. 338), that the interposition of a trustee, intercepting the husband's rights to take the rents and profits, is inconsistent with the nature of the statutory estates.

The error in the reasoning of the learned judge pronouncing these decisions rests on the hypothesis, that the statutes declaratory of what the wife's separate estate consists, or more properly speaking taking away the husband's marital rights, as they existed at common law, and would now exist but for the statutes, affect or change the law by which equitable separate estates were created and regulated. The statute really does not create, and was not intended to create, an estate in the wife. Before the statute can operate, the estate exists in the wife, and to that estate the common law attaches the marital rights of the husband. The divestiture of these rights was the purpose of the statute. It was the exercise of these rights, and the consequences resulting therefrom, which pro-

[Short v. Battle.]

duced the mischief the statute proposed to remedy. The husband was not compelled to assert these rights; until he asserted them, the property remained the property of the wife. He could renounce all claim to the wife's personal property, and elect to treat it as hers, and hold or control it as her trustee. The property then remained the absolute estate of the wife, as if she did not rest under the disabilities of coverture and the estate had never been subject to the marital rights of the husband. *Machen* v. *Machen*, 38 Ala. 364; *Jennings* v. *Blocker*, 25 Ala. 415; *Gillespie* v. *Burleson*, 28 Ala. 531; *Gwynn* v. *Hamilton*, 29 Ala. 233. In the absence of the statute, if the husband did not renounce his marital rights, the property of the wife became the property of the husband. He had unqualified dominion over her personal property; and of her real estate, but a mere reversion was left in the wife or her heirs. Having title, it was subject to the payment of his debts, and he could alienate or devise it at pleasure. To take away these common law rights of the husband, and to define and regulate the manner in which the property of the wife should be held, to which these rights would have attached, was the only purpose of the statutes. Property of the wife to which these rights could not attach; which was, by the instrument conferring title, freed from them, and from all liability to the husband's debts, and from his power of disposition, was not within the purview of the statutes. Such property was not subject to the mischief the legislature proposed to remedy. It was secured to the wife without the aid of the statutes. It was left to be governed by the law, which for ages protected it, while the statutes find a field of operation in securing to the wife other property needing legislative protection.

As we have said, these decisions concede that, if a trustee is interposed, the statutory estate is not created, — the interposition of a trustee depriving the husband of the right as trustee to take the rents and profits. If the legal title is vested in a trustee, and the equitable title in the wife, what frees this equitable title from the operation of the statute, if the theory of these opinions be correct? When the rents and profits pass from the trustee, who shall receive them? If paid to the wife, what absolves them from the right of the husband to take them without liability to account? The mere statutory right of the husband to take the rents and profits, without liability to account, is one of the most insignificant elements of the wife's statutory estate. It is an incident which would probably have attached to the estate, in the absence of express statutory provision. Of her equitable separate estate, the husband, while living with the wife, could receive the income

and profits, and in the absence of express dissent on her part, it was presumed they were received with her consent, and they were regarded as a gift to him. *Roper* v. *Roper*, 29 Ala. 247; *Andrews* v. *Huckabee*, 30 Ala. 143. The important and distinguishing characteristics of the statutory estate are its liability for necessaries suitable to the degree and condition in life of the family, and the mode of enforcing this liability; the right of the husband, a right akin to that of an heir, or of a next of kin, to take one half of the wife's personalty absolutely, if she dies intestate, and he survives her, and the use for life of her lands; the substraction of the value of the statutory estate from the value of the wife's dower, and distributive share of the husband's estate, if she survives him; the positive disability of the wife to aliene or charge the estate except as the statute authorizes. These are the peculiar characteristics of the statutory estate, distinguishing it from the equitable separate estate of the wife, — characteristics not belonging to the latter estate, and which could arise only from express limitation, or stipulation in the instrument creating it, and some of them incapable of creation even in that mode. Under the statute, the property of the wife may be held by an equitable or legal title. Whether held by the one title or the other, it is her statutory estate if not otherwise limited.

The donor of the estate, if he offends no law, may impose whatever limitations, or impart whatever qualities or incidents he chooses to the estate he may create. When by proper words he creates an equitable separate estate, does he not as clearly manifest an intention to deprive the husband of the statutory right to take the rents and profits, as if he had made the gift in form to a trustee? When an equitable separate estate is created by gift, devise, or conveyance, or any other trust is created, the nomination and appointment of a trustee is not material. The trust is the subject of equity jurisdiction, and can never fail for the want of a trustee. The interposition of a trustee, in whom the legal title was vested, would not prevent the marital rights of the husband from attaching to the interest created in the wife at the common law. 2 Brick. Dig. 82, § 169. The only effect ascribed to it in these decisions is, that it intercepts the right of the husband to take the rents and profits; affecting his right in this respect only, what is it that cuts off the statutory right to the use and occupancy of the wife's real estate during life, if he survives the wife, whether there be issue born of the marriage or not? What is it that divests his right to take absolutely, as if he were next of kin, one half of her personalty? It is not the interposition of a trustee, but the force and effect of the terms

of conveyance, creating in the wife an estate separate from all right or interest of his, — an estate which cannot be more accurately described than as an estate to her sole and separate use, — an estate she takes and enjoys as if she were a *feme sole*, which effect these results.

Without extending this opinion, by a repetition of the reasoning pursued in the earlier decisions, which seems to us unanswerable, we feel constrained to overrule the cases of *Molton* v. *Martin, supra, Glenn* v. *Glenn, supra,* and *Denechaud* v. *Berry, supra,* on the point we have considered. The former decisions were made soon after the enactment of the statutes creating a married woman's statutory estate. They announce that these statutes apply only to such estates of the wife as would not without statute have been a separate estate, and not to estates which by the terms of their creation are esteemed the separate estate of the wife. On this principle the mischief the statute proposes to correct is fully met, and the conveyances of parties allowed full operation. When by a gift or devise the intent to exclude the marital rights of the husband clearly and unequivocally appears from the creation in express terms of an equitable separate estate, — when it is not to be inferred from doubtful or equivocal expressions, — when the exclusion of the husband rests not on probability or possibility, but on the certainty and force of the terms employed, the statutes do not apply. But if the intent is doubtful or equivocal, — if it is matter of speculation, — the statute intervenes, as the common law would in its absence have intervened, and defines the character and quality of the estate.

The decree of the chancellor was not in accordance with these views, and must be reversed, and a decree here rendered dismissing the appellee's bill at his costs in this court, and the court below.