## Sprague *et al. v.* Shields.

*Bill in Equity to foreclose Mortgage.*

1. *Bill; when demurrable.*—A bill to foreclose a mortgage of lands by a married woman, is demurrable, unless it sets forth the substance, at least, of the deed or other instrument under which the estate is held, that the court may determine the nature of the estate, and her power over it.

2. *Equitable estate; what creates.*—A legacy to a married woman under the provisions of her father's will, directing that the amount "shall go into the hands of a trustee for her use and behoof, and no other," manifests a clear intention to vest in her an equitable estate; and where the trustee purchases lands, it his duty to take a conveyance on the same trusts; and he having done so, a marriage settlement entered into by the wife, after the husband's death, upon the eve of a second marriage, can not alter her estate as to such lands, whatever effect it might have on after acquired property; and the wife may bind such estate by her contracts, notwithstanding her coverture and the terms of the marriage settlement.

APPEAL from Chancery Court of Mobile.
Heard before Hon. H. AUSTILL.
The appellee, as surviving partner of the firm of Milhouse,

Shields & Co., sought by his bill to foreclose a mortgage made to said firm on the 13th day of January, 1872, by Mrs. E. C. Sprague, A. M. Sprague, her husband, and S. W. Oliver, conveying a house and lot in the city of Mobile.

The bill, after describing the lands, states that they were the "lot of land conveyed to John S. Hunter, deceased, on the 27th day of May, 1851, as trustee for said Elizabeth, by A. L. Pope and others; that said Hunter during his life-time held the legal title to said lands, as a mere naked legal trustee, and that he died before the execution of said mortgage; that said Elizabeth C. Sprague held said lands as her separate estate by contract, and that she had a right to, and in this equitable court did bind the same," for the payment of the note which the mortgage was given to secure. It appears from the bill that the consideration of the note was certain indebtedness of the husband, and also certain advances made to carry on certain plantations in which Mrs. Sprague was interested. At the date of the filing of the bill, the indebtedness secured by the mortgage amounted to several thousand dollars.

Mrs. Sprague admits the execution of the mortgage and notes; that the house and lot were her property, and were held by her brother John S. Hunter as her trustee; that both the deed and the mortgage were executed during the life of her husband, A. M. Sprague, who died prior to the filing of the bill. She avers in her answer that the mortgaged property came to her by inheritance, and constituted her statutory separate estate, and pleaded her coverture in avoidance of the mortgage.

The will of Mrs. Sprague's father, and also the deed conveying the premises in controversy, were introduced in evidence, though neither was set out in the pleadings.

Mrs. Sprague, at the time of her marriage with A. M. Sprague, was the widow of one Oliver, and her second marriage occurred before her father's death.

Before her marriage with Sprague, a marriage contract or settlement was entered into between her and her intended husband, which conveyed all the property she then owned, or which she might thereafter acquire, to one Bolling as trustee, and this settlement recognized the marital rights of the husband as to the income, and recites that it was entered into, because the husband was unwilling that the property of his intended wife should be subject to his debts.

The will of Mrs. Sprague's father bequeaths to her one-third of the value of certain slaves, and directs that said

[Sprague v. Shields.]

sum shall " go into the hands of said John S. Hunter as trustee for Elizabeth C. Sprague for her use and behoof, and no other."

The deed to the house in controversy, shows that it was made in the year 1851, by commissioners under a decree of the Chancery Court, to John S. Hunter as trustee for Mrs. Elizabeth C. Sprague, and its granting clause was as follows : "For and in consideration of the sum of $10,000 to us in hand paid by John S. Hunter, trustee of Mrs. Elizabeth C. Sprague, the receipt whereof is hereby acknowledged, do hereby grant, bargain, sell and convey unto said John S. Hunter, trustee of Mrs. E. C. Sprague, and for her sole and separate use, free and discharged from the debts or claims of her husband," the following lot of land, describing it. The money thus paid was part of the legacy given by the will.

Mrs. Sprague demurred to the bill on several grounds; among others, that it failed to show clearly that the estate in the lands sought to be condemned, was such a separate estate as she could bind by her contracts. The demurrer was overruled, and the chancellor decreed that complainants were entitled to relief, and directed a reference, &c.

This decree is now assigned as error.

STEWART & PILLANS, and E. S. DARGAN, for appellant. The bill is fatally defective, and the demurrer of appellant should have been sustained. The only allegations in the bill to sustain the decree are, " that John S. Hunter held the title to the property in trust for Mrs. Sprague, and that Mrs. S. held the land as her separate estate by contract, and had the right to dispose of it. These allegations are plainly insufficient. They are but the legal conclusions of the pleader, and not statements of fact. The facts are the written terms of the deed, and these should have been set forth or the deed itself made an exhibit to the bill.—*McDonald v. Mobile Life Ins. Co.*, 56 Ala. 468. The legacy accrued to Mrs. Sprague in 1851, and was clearly subject to the law regulating the statutory separate estates of married women, and it is clear that the wife could not mortgage her estate to secure the debt of her husband. The legacy bought the house, and the house as well as the legacy could not be bound by the wife to pay debts of the husband.

J. LITTLE SMITH, *contra.*—The deed under which Mrs. Sprague held the premises creates in her an equitable separate estate. It conveys the lot to John S. Hunter, trustee

for her sole use, free and discharged from the debts and claims of her husband. This lot being her equitable separate estate, it is immaterial whether she signed [as principal or surety.—44 Ala. 339; 17 Ala. 797; 19 Ala. 682; 30 Ala. 283; 34 Ala. 535; 40 Ala. 561. The money which was invested in this house, came to Mrs. Sprague under the will of her father, who died in 1846, and the will directs the legacy to be held by a trustee for *her use and behoof, and no other*. This stamped on the legacy a trust which can not be changed, and gave her a vested right to the property charged with the trust declared, and no other. There was at the time of the testator's death no separate estate, save a contract separate estate, and words more adapted to create such an estate could not well be used. They express a clear and well defined purpose to exclude the marital rights of the husband, and give to the wife an estate free from his control and subject to any contract she may make.—39 Ala. 514; 38 Ala. 115; 18 Ala. 84; 26 Ala. 36. While it is true that the assent of the executor is necessary to vest the legatee with the legal title to the legacy, when such assent is given it relates back to the will, and that instrument determines the rights of the legatee.—8 Port. 529. The will in this case gave Mrs. Sprague a contract separate estate, and no act of the executor or any one else could impose conditions not in the will, or vary her tenure as declared therein.

BRICKELL, C. J.—The bill is filed to foreclose a mortgage, executed by husband and wife, conveying the wife's real estate, to secure the payment of a debt contracted by them during coverture. The argument in support of the demurrer to the bill, so far as the demurrer is now insisted upon, is, that the averments of the bill, do not state with certainty, whether the estate of the wife in the lands, was her equitable, or her statutory separate estate—the wife having capacity, if her estate was equitable, and her power of alienation was not limited by the terms of the instrument creating it, to execute the mortgage—but if her estate was statutory, she was without that capacity.

The general rule of the common law, applicable alike in courts of equity, and courts of law, is, that a wife can enter into no contract binding her personally, and can make no sales, gifts, transfers, or conveyances of property real or personal. In courts of equity, an exception was, and is recognized, in reference to property held to her sole and separate use. As to such property, that court has long recognized

her capacity to contract, her contracts not binding her personally, but imposing a charge on the property, the court enforces. Not only does the court recognize her capacity to charge, but her power to alienate as if she were a *feme sole;* her power to charge or alienate not being limited by the instrument creating the estate. It is an elementary, or as is said in *Duckworth v. Duckworth,* 35 Ala. 70, a cardinal rule of equity pleading, "that a bill must show the complainant's claim or title to relief with accuracy and clearness, and with such certainty that the defendant may be distinctly informed of the nature of the case which he is called on to meet; matters essential to the complainant's right to relief must appear, not by inference, but by direct and unambiguous averment." A bill to enforce the contract of a married woman, or a right derived from her alienation, will not show with accuracy and clearness, a claim or title to relief, unless it shows the property to be bound by the contract, or which is claimed by the alienation. The separate estate which a court of equity recognizes, and recognizes the power of the wife to charge by her contracts, or to dispose of as if she were a *feme sole,* when it consists of lands, must be created or declared by writing; by deed, devise, marriage settlement, or other appropriate instrument. The bill must not only describe the property, but it must also show the capacity of the wife to charge or convey it. This can be shown only by stating the deed or other instrument conferring the capacity. It is not necessary to set it out in *haec verba,* but its substance must be shown, that the court may determine whether the capacity to make the contract, or enter into the alienation is conferred.—*McDonald v. Mobile Life Ins. Co.,* 56 Ala. 468; *Winter v. Quarles,* 43 Ala. 692; *Reel v. Overall,* 39 Ala. 138; *Cowles v. Morgan,* 34 Ala. 435.

The averments of the present bill are not sufficient to satisfy this rule. They show no more than that the lands were conveyed to a trustee for Mrs. Sprague, and that she held them *as her separate estate by contract, and that she had a right to, and in this equitable court did bind the same, for the payment of said debts,* &c. The interposition of a trustee, in whom the legal estate resided, does not necessarily create an equitable separate estate. Whether such estate was created, would depend upon the terms of the trust—whether it was expressed to be for the sole and separate use of the wife, excluding all marital right of the husband.—*Lenoir v. Rainey,* 15 Ala. 667; *Short v. Battle,* 52 Ala. 456. The manner in which Mrs. Sprague *held the*

*lands,* could not change the character of her title. The remainder of the averment, is simply the conclusion of the pleader, not the statement of facts showing the capacity of Mrs. Sprague.—*Cockrell v. Gurley,* 26 Ala. 405. The demurrer, consequently ought to have been sustained. An amendment may cure this defect in the bill, if the facts warrant it. We proceed therefore, to inquire whether the estate of Mrs. Sprague, in the lands, is her equitable separate estate, which she could alienate by mortgage, as a security for the debt contracted by her and her husband.

It is conceded the deed from Pope and others, to Hunter as trustee, by its terms created an equitable separate estate, which Mrs. Sprague, had the capacity of a *feme sole,* to alienate or charge. Whatever may be the operation, if any, on after acquired property, of the settlement into which she and her husband entered on the eve of marriage, that settlement can not affect, limit, or qualify the estate taken by her under the conveyance from Pope and others. The estate was derived from the bequest in the will of her father, and is subject to the trusts he imposed in that bequest, and not to the trusts and stipulations of the prior marriage settlement, to which he may have been unwilling to subject it. When a father or other person, makes a gift for the use of a married woman, he may, if he offends no law, impose whatever limitations or impart whatever qualities and incidents he chooses, to the estate he creates.—1 Bishop on Married Women, § 797; *Short v. Battle,* 52 Ala. 456. No particular language, no particular form of expression, no technical words, are necessary to the creation of an equitable separate estate of a married woman. It is enough that from the terms of the instrument, it clearly and unequivocally appears, that the gift is to her separate use, excluding the marital rights of the husband. The gift in the will of Mrs. Sprague's father, is of a third of the valuation of certain slaves, which when realized, "is to go into the hands of John S. Hunter, as trustee of Elizabeth Sprague, for her use and behoof, and no other." It is impossible to doubt the intent of the testator, was the creation of a trust for the sole and separate use of his daughter, excluding the husband and all others from participation in its benefits, or from power to control and direct the appropriation of the money bequeathed. When the trustee, with the consent of Mrs. Sprague, (and that consent must be presumed from her continuous occupancy of the premises, for more than twenty years, claiming under the deed) invested the money realized

(28)

[Carter v. Wilson.]

in the purchase of real estate, it was his duty, to which a court of equity would have compelled him, if he had not voluntarily performed it, to take a conveyance to himself, as trustee, of the legal estate; and that the same trusts should be declared, and impressed on his estate, as the testator had declared in the origin and creation of the trust. Neither by the terms of the bequest, nor by the terms of the deed conveying the premises to the trustee, is the power of Mrs. Sprague, to charge or alienate the estate, limited or restrained. She had capacity to alienate or charge it for the payment of her own debts, or debts contracted by her husband. The mortgage is therefore a valid security.

The defect in the bill, compels a reversal of the decree. Reversed and remanded.